No. 9825.

JOSEPH A. WALKER, SYNDIC, AND MRS. C. E. McVEAN, ADMINIS-
TRATRIX, vs. MARY A. DOHAN.

The sale of the unexpired term of a lease involves the sale of the obligations as well as the rights. But nothing prevents the severance of the right of occupancy from the obligation to pay the rent and the sale of the former alone. The purchaser, in such case, would, of course, assume the risk of his right being defeated by failure of the principal lessee to pay his rent; but he would, by no means, become personally bound for the rent.

The sale in this case being of the right of occupancy alone, and not of the lease, the defendant cannot be held for the rent.

APPEAL from the Civil District Court, for the Parish of Orleans. *Rightor*, J.

---

*Braughn, Buck, Dinkelspiel & Hart* for Plaintiffs and Appellants.

*W. S. Benedict* for Defendant and Appellant.

---

The opinion of the Court was delivered by

FENNER, J. The firm of C. E. McVean & Co. held a lease of a

store-house in this city, which began on October 1, 1884, and ended on September 30, 1886. By the death of McVean and the insolvency of cession of the firm, the present plaintiffs, in the capacities stated, became their legal representatives.

. A judicial order was obtained in those proceedings for the sale of the following described property, to-wit:

" The right of occupancy from day of sale to the 30th of September, 1886, of that certain store, situated at the southwest corner of Canal and St. Charles streets., said store having been lately occupied by C. E. McVean & Co., as a merchant tailor's and gentlemen's furnishing goods establishment."

The property thus described in the order, the advertisements, and the *proces verbal* of sale, was adjudicated to defendant on January 19, 1886, as the last and highest bidder, at the price of fifty dollars, which was paid.

A few days afterwards, viz: on February 1, in the consolidated proceedings of the succession and insolvency, plaintiffs jointly representing that the rent of the store due and to become due was secured by the lessor's privilege on the movables in the leased premises, which had been sold and the proceeds of which were then in their hands subject to said privilege, obtained an order of court authorizing them to pay in full the amount of said rent to the lessor, viz: $3,750, which payment was made.

Immediately afterwards they brought the present suit, in which they claim from defendant, over and above the price of adjudication, the rent running under the original lease, from day of sale to end of lease, amounting to $3,150.

Defendant filed an exception of no cause of action, which was sustained by the judge *a quo*.

A lease is defined by the Code as " a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing at a fixed price."

The contract embodies, in itself, reciprocal rights and obligations— the *right* of enjoyment and the *obligation* of paying the rent—which, so far as governed by the contract alone, coexist and adhere to each other. Hence, it has been repeatedly decided that the sale of *the unexpired term of a lease*, without qualification, is a sale of the lease for such term, as an entirety, including its obligations as well as its rights; or, in the language of the Court, that the " bid *for the lease* in such a case, is a premium which the bidder is willing to give for the transfer of *the lease* to himself, with all its obligations, as well as all

the rights thereto attached, from the moment of the adjudication."
Bartels vs. Creditors, 11 Ann. 433; D'Aquin vs. D'Armant, 14 id. 217 ;
Brinton vs. Datas, 17 id. 174 ; Lehman vs. Dreyfus, 37 id. 587.

A reference to every one of these cases will show that the thing
sold was *the lease* for its unexpired term.

But in the instant case, as appears from the statement given, the
thing sold is not the lease, but simply the right of occupancy for a
given term.   In other words, the *right* is severed from the *obligation*,
and is sold separately and apart.   In the earliest of the above-quoted
cases, the learned dissenters, Lea and Spofford, JJ., said :   " There are
two ways of selling the unexpired term of a lease—one by selling it
for a premium, subject to the payment of the rent to the landlord ;
the other by selling or assigning *the right of occupation* without the
assumption of the rent.   The latter is the more frequent way of sell-
ing or assigning it, since it rarely happens that the unexpired term of
a lease is worth a premium.   The case of a sub-lease is a familiar
illustration of one form of this latter mode of assignment.    The
sub-tenant has nothing to do with the original contract of a lease.
He is bound only for the payment of the rent which *he* stipulates to
pay as sub-lessee ; and whatever may be the rights of the *landlord* to
cause the lease to be cancelled for non-payment of the rent by *his*
tenant, he can in no case hold the sub-tenant liable for the payment
of the rent under a contract to which he is not privy.   Even the
lessor's privilege would not extend to the effects of the under-lessee,
except so far as the later might be indebted to his principal tenant.
C. C. 2676 ; 6 Rob. 294." Bartells vs. Crs., 14 Ann. 437.

Nothing in the majority opinion conflicted with these plain proposi-
tions of law.   The only point of difference was whether the sale of
the unexpired term of a lease, *es nomine*, without express limitation,
involved the transfer of the obligations with the rights, or of the
latter alone.

Mr. Hennen, the author of the Digest, and one of the most acute
legal minds of his day, in his note on these decisions, anticipated the
very question which is now presented, saying :   " What forbids the
severance of a right from its correlative obligation and the transfer of·
the one without the other?   The lessee's right is to occupy the
premises, his obligation to pay the rent.   Can he not make a sale or
donation of the right, retaining himself the obligation to pay the
rent?   It is true that the non-fulfilment might defeat the enjoyment
by his vendee of the right transferred.   But the transfer and sever-

ance would be none the less possible and legal. * * * The lessor's rights are not thereby affected." 1 Hennen's Dig., p. 803.

These suggestions admit of no answer conformable to reason, and the right and power of the lessee to transfer his right of occupancy separately from his obligation to pay the rent, though dependent as regards the lessor upon *his* compliance with that obligation, must be conceded, unless restrained by special contractual stipulations.

Indeed, this very case affords a conspicuous illustration of the necessity for the existence of such right and power. Here was a case where the rent due by the insolvent lessees for the entire term was abundantly secured by privilege on movables which had been sold and the proceeds held by plaintiffs subject to the lessor's claim. By virtue of this obligatory payment of the rent, plaintiffs were left with the right of occupancy which was, naturally, useless to them and worthless, unless they could sell it.

What should hinder them from selling it and realizing, for the benefit of the estates which they represented, whatever it would bring?

They have exercised that right. They have severed the right of occupancy from the obligations of the lease, and have sold the former simply and alone. This is what the defendant purchased, according to the plain terms of the adjudication. She has not bought a lease or the unexpired term of a lease, and cannot be held for obligations which she never expressly or impliedly assumed.

Judgment affirmed.

---

### DISSENTING OPINION.

BERMUDEZ, C. J. This controversy involves the question of the extent of the liability of the adjudicatee of the right of *occupancy* of premises, the lease of which had many months to run.

The suit is brought by the syndic of an insolvent firm and by the administratrix of the succession of a deceased partner for the recovery of rent paid the landlord, from the defendant, as the adjudicatee of the right of occupancy of the property for the unexpired term of the lease.

To the petition an exception of *no cause of action* was filed.

From a judgment sustaining this defense the plaintiffs have taken this appeal.

From the petition and documents annexed to it, the following appear to be the facts in the case:

Walker and McVean vs. Dohan.

On the 15th of August, 1884, the estate of S. B. Slocomb leased to Moriarty & McVean, for the term of *two* years, commencing on the 1st of October following, the southwest corner of Canal and St. Charles streets, for $4,500 per annum, payable monthly; the defendant, Mary Dohan, serving a security for the payment of the rent and the fulfillment of all the obligations thereof.

The firm having gone into insolvency, and one of the partners, Chas. E. McVean, having died, the court ordered the sale of the right of occupancy of said premises.

On the 19th of January, 1886, the sheriff offered the right of occupancy for sale, which was adjudicated to the defendant for $50, paid cash, who is now sued for $3,150, for the rent from that date to the termination of the lease, 1st of October, 1886.

*After* the sale, the syndic paid, with the authority of the court, the landlord, with a view to a subrogation to the latter's rights under the lease.

The defense, practically, is that, as the *right of occupancy* and *not the lease*, was purchased, the defendant is not liable for the rent of the premises beyond the $50 which were actually paid to the sheriff.

It has been held, in several cases, that when the lease is sold to liquidate a succession, or an insolvency, the amount of adjudication is to be considered as a *bonus or premium* for the lease, and that the adjudicatee is liable for the rent, under the conditions of the lease, for the unexpired term.

The last expression of the judicial mind on that question is to be found in the case of Lehman vs. Dreyfus, 37 Ann. 587, in which previous authorities were reviewed and expounded. 11 Ann. 433; 14 Ann. 213; 17 Ann. 174.

While counsel for the purchaser denies the applicability of the principle announced in the most recent case, he remained perfectly silent touching the anterior adjudications, and refers to no authority to sustain his position.

It is impossible to discern in this case any difference between the sale of a lease and the sale of the right of occupancy. Of what advantage would the right to the lease be without the right of occupancy, and what would be the benefit of the right of occupancy without the lease?

The lease confers the right of occupancy and the right of occupancy is the consideration of the lease. There was no severance.

Whoever, therefore, acquired the right of occupancy under the

lease, acquired the lease, and whoever bought the lease, bought the right of occupancy under it.

If, by purchasing the lease, the adjudicatee incurs the obligations of a lessee, it is clear that acquiring the right of occupancy is acquiring the lease, and is an indisputable voluntary assumption of consequent obligations.

The jurisprudence which has established the liability of the purchaser of the lease for the payment of the rent, may be erroneous; but it has for thirty years become a rule of property which must be respected, and which cannot be destroyed by subtle questionable distinctions without a difference.

When the court ordered the sale, and when the sheriff offered the right of occupancy, bids, in the shape of *premiums*, were expected for the purchase of that right as a thing, as the object to be sold, which the insolvents surrendered to the possession and enjoyment of the premises, subject, of course, to all the rights and obligations, as lessees, during the eight months and ten days to run before the expiration of the lease.

In other words, what was offered and what was sold was the *privilege of occupying* the premises, as the insolvents would have done had they not surrendered to their creditors.

The adjudicatee, by purchasing the right of occupancy, jumped into their shoes, and has thereby acquired all their rights and incurred all their obligations under the lease.

In the case of Brinton vs. Datas, last cited, one of the grounds of resistance was, as appears by the transcript, that the lease (offered in evidence, but to which the defendant was *not* a party) was *res inter alios acta*. The objection did not hold.

The court then declared that the adjudicatee was liable for the rent, whether the lease or the terms and conditions thereof were announced in the advertisement or not. " It is the *legal effect of the adjudication*."

In the present case the adjudicatee cannot plead ignorance of the lease, for she, by a specially authorized agent, intervened in the act and served as surety.

She cannot be heard to say: that she is a " *stranger*," or " *third person*." She actually had knowledge that there was a lease, and that the lessees were to pay rent at the stated rate for the premises.

Purchasing the right of occupancy was purchasing the lease, for without the lease, the right of occupancy would not exist. The right

of occupancy, therefore, implies the lease. This must have been the general understanding at the sale.

To suppose that when the defendant offered $50 for the right of occupancy, during *eight* months and more, of premises rented for $4,500 *per annum*, she understood that she would, on payment of that paltry sum only, be entitled to the possession and enjoyment of the property during that time, free from the rent under the lease, would require a stretch of credulity which the most conciliating mind cannot stand.

WATKINS, J., concurs in this opinion.