ZAÉRINGER REALTY CO., INC., v. NEW ORLEANS HOPS, MALT & EXTRACT CO., INC.

---

(March 18, 1929. Opinion and Decree.)
(April 1, 1929. Rehearing Refused.)

---

Legier, McEnerny and Waguespack, of New Orleans, attorneys for plaintiff, appellee.

Edgar M. Cahn, of New Orleans, attorney for defendant, appellant.

JANVIER, J. Defendant leased from plaintiff, the premises 714 Perdido Street, commencing November 15, 1924, and terminating September 30, 1925.

On its termination, the lease was extended in writing for one year, from October 1, 1925, to and including September 30, 1926. Rent notes for $140 per month were executed by defendant.

On March 23, 1926, by agreement, the lease was cancelled as of that date, but at that time there was unpaid rent amounting to $540. It is for this sum and also for $199.63 damages, that plaintiff sues.

Defendant, or its sub-lessee, without authority, made certain structural changes in the premises leased and after the termination of the lease, plaintiff was required to spend $199.63 to put the prop-

erty back into the condition in which it was before the changes were made.

Defendant refuses to pay and bases its refusal on two contentions:

1st. That with the knowledge and consent of plaintiff the building had been sub-let to one John Papalknomo, better known as "John the Greek," and that this sub-lessee was accepted by plaintiff as lessee with the understanding that defendant was released.

2nd. That due to the vibrations and noise resulting during the construction of the Masonic Temple, across the street, the leased premises were made uninhabitable, and that the only changes made in the building were made for the purpose of preventing its collapse and were absolutely essential to the safety of the property and its use for the purpose intended and were made necessary by the construction work referred to.

As to the contention that the sub-lessee had been accepted as tenant, we find the proof entirely against defendant. Defendant claims that it itself had occupied the premises for only about two weeks, and that it had sub-let it to another concern for a short time, and then to one "John the Greek," and that after the first two weeks, during all the balance of the lease the rent had been paid by the sub-tenant.

We find nothing in the record to show any agreement by the plaintiff to the release of the defendant. On the contrary, when the first term expired, although at that time, according to defendant, there was a sub-lessee in the premises, defendant itself executed the new lease and new rent notes.

That the plaintiff accepted rent from the sub-lessee seems to us to have no bearing because the evidence shows that the rent notes were deposited in a bank for collection and that defendant, at no time, had knowledge as to who was paying the rent.

It would take very strong proof to sustain a defense of this character. Art. 2190, 2192 and 2194 of the Civil Code are clear and unambiguous. They read as follows:

Art. 2190. "NOT PRESUMED. Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt."

Art. 2192. "Id. EXPRESS DISCHARGE OF FORMER DEBTOR. The delegation, by which the debtor gives to the creditor another debtor who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation."

Art. 2194. "INDICATION OF NEW DEBTOR OR CREDITOR. The mere indication made by a debtor of a person who is to pay in his place, does not operate a novation. The same is to be observed in the mere indication by the creditor or a person who is to receive for him."

In fact, we find that under the jurisprudence of this State, no novation takes place unless the specific consent to the novation itself is proven.

"The assumption of a debt by a new firm succeeding to the business of one that has been dissolved, the transfer of the debts to the books of the new firm and the assent of the creditor to the arrangement will not novate the debt, without an express agreement to discharge the original debtors."

Carriere vs. Labiche et al., 14 La. Ann. 211, 74 Am. Dec. 428.

The second contention appears to us to be inconsistent with the first, and we do not believe that under the answer filed, the evidence should have been admitted in support thereof. However, we have gone

carefully over the record and feel, as the trial judge did, that the evidence entirely fails to substantiate the contention of the defendant.

As to the interest allowed, the lease itself provides for the maturing of all the notes on the default of any one, therefore, interest on all, is due from the date of maturity of the first unpaid note.

As to attorney's fees, this item is also provided for by the lease.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed. Costs to be paid by appellant.