SAVOY, Judge.
On April 6, 1956, Pan American Production acquired an oil, gas and mineral lease executed jointly by plaintiff’s grandmother, Lucille Melancon Maus, and Cabel Joseph Melancon, Jr., covering the property involved in the instant suit. The lease contains an express warranty of title. Pan American changed its corporate name to Pan American Petroleum Corporation, the present lessee and a defendant. Pan Am drilled and completed wells in the vicinity of the subject property, and the lease was placed in production units.
Lucille Melancon Maus died in 1959. Her succession was opened in Orleans Parish, Louisiana, and a judgment of possession was rendered sending the heirs, not including plaintiff, in possession as owners of the property in dispute. Plaintiff filed a petition in Orleans Parish seeking to be recognized as a legal descendant and forced heir of her father, Cabel Melancon, Sr., and by representation through her father, as an heir of her paternal grandmother, Lucille Melancon Maus.
After the filing of the above petition by plaintiff in Orleans Parish, the heirs of Lucille Melancon Maus filed suit in St. Martin Parish, Louisiana, (the location of the property in dispute) seeking to disavow plaintiff as a child of Cabel Melancon, Sr. Judgment was rendered in the district court in favor of the present plaintiff, and upon appeal, this Court affirmed the judgment of the district court. Melancon v. Sonnier, La.App., 157 So.2d 577 (1963).
The present suit is by plaintiff against the other heirs of Lucille Melancon Maus and Cabel Melancon, Sr. to establish the extent of her undivided interest in the property inherited and seeking to have the interest inherited by her from her father declared not to be subject to the lease executed by her grandmother in favor of Pan Am.
By stipulation of all parties through their respective attorneys it was agreed that plaintiff owns an undivided 2%oth interest in said property in litigation by inheritance from her father, and an undivided %oth by inheritance from her grandmother, Lucille Melancon Maus.
The sole issue before this Court is whether the undivided 2%oth inherest inherited by plaintiff from her father is subject to the mineral lease granted by her grandmother in 1956 to Pan Am.
Counsel for plaintiff contends that the undivided interest inherited by plaintiff from her father is not affected by the lease of April 6, 1956, signed by her grandmother, for the reason that said lease contains language limiting the warranty of title. On the other hand, counsel for defendants contend that the entire undivided fee interest owned by plaintiff is covered by and subject to the above-mentioned lease for the reason that plaintiff, having accepted her grandmother’s succession, is bound by her grandmother’s warranty in executing the lease.
In Humble Oil & Refining Company v. Boudoin, (La.App., 3 Cir., 1963), 154 So.2d 239, this Court stated:
“The law is well settled that when heirs accept the succession of their ancestor simply and unconditionally, they become bound by his warranty of title to such an extent that they are estopped to deny the warranty. * * * ” (Citations omitted)
It has been established that a mineral lease is subject to the laws of warranty. Carter Oil Company v. King, (La.App., 2 Cir., 1961), 134 So.2d 89, and cases cited therein.
It has also been held that the obligation of warranty is indivisible. In Robinson v. Dunson, (La.App., 1 Cir., 1953), 65 So.2d 643, the Court of Appeal made the following statement:
“The jurisprudence of this State has been established to the effect that, except as to the reimbursement of the purchase price, the obligation of joint vendors to *575 maintain the vendee in peaceable possession is an indivisible one, and that where several persons have joined in an act of sale with warranty of title, each will be held to be warrantor for the entire title. Soule v. West, 185 La. 655, 170 So. 26; Schultz v. Ryan, 131 La. 78, 59 So. 21.”
Counsel for plaintiff contends that the rule enunciated in the Robinson case, supra, is not applicable in the instant case because of the clauses in the lease on April 6, 1956, which limit the lessor’s obligation to warrant the whole of said lease.
In his brief counsel for plaintiff makes the following statement:
“In the instant case, the contract of lease contains the following provisions which appear immediately after the description:
“ ‘All land owned by the Lessee in the above mentioned Section or Sections or Surveys, all property acquired by prescription and all accretion or alluvion attaching to and forming a part of said land are included herein, whether properly or specifically described or not. Whether or not any reduction in rentals shall have previously been made, this lease, without further evidence thereof, shall immediately attach to and affect any and all rights, titles and interests in the above described land, including reversionary mineral rights, hereafter acquired by or inuring to Lessor and Lessor’s successors and assigns.’
“Paragraph 10 of the lease reads as follows :
“ ‘10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee may, at its option, discharge any tax, mortgage or other lien upon the land and be subrogated thereto and have the right to apply to the repayment of Lessee any rentals and/or royalties accruing hereunder. If Lessor owns less than the entire undivided interest in all or any portion of the lands or mineral right relating thereto (whether such interest is herein specified or not) rentals and royalties as to the land in which an interest is outstanding in others shall be reduced proportionately to the interest of the Lessor therein, but the failure of Lessee to reduce rentals shall not affect Lessee’s rights to reduce royalties; and all outstanding royalty rights shall be deducted from the royalties herein provided for. Lessee shall have the right to purchase a lease or leases from others to protect its leasehold rights and shall not thereby be held to have disputed Lessor’s title; and in the event Lessor’s title or an interest therein is claimed by others, Lessee shall have the right to withhold payment of royalties or to deposit such royalties in the registry of the Court until final determination of Lessor’s rights.’
“Paragraph 12 of the lease reads as follows :
“ ‘12. If the land herein described is owned in divided or undivided portions by more than one party, this instrument may be signed in any number of counterparts, each of which shall be binding on the party or parties so signing regardless of whether all of the owners join in the granting of the lease and the failure of any party named herein as Lessor to sign this lease shall not affect its validity as to those whose signatures appear herein or on a counterpart hereof.’
“It will be seen from the above provisions taken from the lease contract in question that it was anticipated and/or presumed that the lease contract might apply to only an undivided interest and the language of the lease limits lessor’s obligation to warrant the title to the interest owned by the lessor and, therefore, the contention of the defendant with regard to warranty and estoppel is unfounded.”
Counsel for appellee contends that the lease contains an express warranty of title, and there is no language in the lease limiting the obligation.
The first paragraph of the lease quoted by counsel for appellant is referred *576 to as a “coverall clause” and a “rever-sionary clause”. The coverall clause refers to lands not specifically described in a lease but forming a part of the land described which lessor might own by accretion, al-luvion or by prescription. This clause cannot be construed as a limitation of the warranty, but is inserted for the protection of the lessee should lessor own additional property adjacent to the property described in the lease.
The reversionary clause is not a limitation of warranty. It is an addition to the warranty. It was inserted in the lease to protect the lessee. At the time the lease in question was executed, the jurisprudence in Louisiana was unsettled as to whether a reversionary interest was covered by a mineral lease.
The obligation of warranty is contained in paragraph 10 of the lease, the first sentence of which reads as follows:
“Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee may, at its option, discharge any tax, mortgage or other lien upon the land and be subrogated thereto and have the right to apply to the repayment of Lessee any rentals and/or royalties accruing hereunder.”
There is an implied warranty against eviction even if no stipulations are made respecting the warranty. This warranty may be added to or excluded by agreement.
LSA-Civil Code Article 2503 states:
“The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty.
“But whether warranty be excluded or not the buyer shall become subrogated to the seller’s rights and actions in warranty against all others.”
Paragraph 10 of the lease was inserted by the lessee for its protection, and we are of the opinion that the section adds to the general warranty rather than limiting it. There is no contention by plaintiff that this section is illegal or against public policy.
Counsel for appellant has underlined in his brief the second sentence of paragraph 10 providing for a reduction of rentals and royalties by lessee should lessor own less than the undivided interest. A lessee has a right to reduce rentals. This is specifically provided for by LSA-C.C. Article 2701 which reads as follows:
“If, in the lease of a predial estate, the premises have been stated to be of a greater extent than they in reality are, the lessee may claim an abatement of the rent, in the cases and subject to the provisions prescribed in the title: Of Sale.”
We are of the opinion that this language is not a limitation of warranty but a right granted to lessee by the above codal article.
Counsel for appellant has underlined a portion of the second sentence in paragraph 10 whereby lessee is granted the right to purchase additional lease or leases to protect its rights and this act or acts will not be construed as disputing lessor’s title. In the opinion of this Court, this clause is an addition to rather than a limitation of warranty. The apparent purpose of this clause is to protect lessee from litigation and peaceable possession of the property so leased.
Paragraph 12 dealing with the counterpart provision, namely, that the lease may be executed in counterpart, is not a limitation of the general warranty obligation.
While resourceful counsel for appellant has made many ingenious arguments in support of his position, we are of the opinion that when the lease agreement is viewed as a whole, there is not any limitation of *577 warranty contained therein. We agree with the trial judge that since plaintiff accepted the succession of her grandmother unconditionally, she accepted all of the benefits and liabilities which accompany such an unconditional acceptance. Therefore, she is bound by the lease executed by her grandmother in favor of Pan American Petroleum Corporation in the instant case.
For the written reasons assigned the judgment of the district court is affirmed at appellant’s costs.
Affirmed.