**Anelie LeBlanc MIRE et al.**

v.

**SUNRAY DX OIL COMPANY et al.**

**Civ. A. No. 12993.**

United States District Court
W. D. Louisiana,
Lafayette Division.

May 9, 1968.

Domengeaux, Wright & Bienvenu, D. Mark Bienvenu, Lafayette, La., for plaintiffs.

Liskow & Lewis, Austin W. Lewis, and James L. Pelletier, New Orleans, La., for defendants.

MEMORANDUM OPINION

PUTNAM, District Judge.

This case originated in the Fifteenth Judicial District Court of the State of Louisiana, Parish of Lafayette, having for its object the cancellation of an oil, gas and mineral lease affecting lands owned by plaintiffs in the Parish of Lafayette and an accounting for the proceeds of production since the date of the alleged default. The lease in question was executed on June 18, 1963, in favor of Charles L. Beck (Beck), a citizen of Louisiana residing in Lafayette. The rights thus acquired by Beck were assigned by him to defendant Sunray DX Oil Company (Sunray), with subsequent transfers of overriding royalties to J. P. Owen, Sr. (Owen), also a Louisiana citizen residing in Lafayette, and to General American Oil Company of Texas (General American). Sunray and General American are foreign corporations qualified to do business in Louisiana; these corporations now own the entirety of the leasehold interest in the property. All four of these parties were named defendants.

Alleging diversity of citizenship and jurisdictional amount as required by 28 U.S.C.A. § 1332(a) and 1441(a), and that the joinder of Beck and Owen was fraudulent and for the purpose of defeating the jurisdiction of the court, the matter was removed. Beck and Owen filed motions for summary judgment supported by affidavits and documentary evidence, establishing that they claim no further interest in the lease, praying for dismissal. They were dismissed.

Sunray and General American also filed motions for summary judgment. Plaintiffs have moved for a new trial on the question of Beck's dismissal as above set forth. These motions are now before the court for decision.

The issue quickly resolves itself to the single question of whether or not the original lessee of a Louisiana mineral lease remains bound to the lessor for the fulfillment thereof after having executed a complete assignment of the lease. We hold that he does.

■ Louisiana's Civil Law system applies concepts to mineral leases which are basically different from legal theories of the common law. The distinction was recognized in Viterbo v. Friedlander, 120 U.S. 707, 7 S.Ct. 962, 30 L.Ed. 776 (1887), as follows:

"In considering this case it is important to keep in mind that the view of the common law of England and of most of the United States, as to the nature of a lease for years, is not that which is taken by the civil law of Rome, Spain, and France, upon which the Civil Code of Louisiana is based." (120 U.S. at 712, 7 S.Ct. at 964)

Contracts relating to the development of the mineral resources of the State have been the subject of much travail for the legal profession and for the judiciary. Volumes have been written concerning the nature of these contracts, which are usually in the form of a sale or reservation of a mineral right upon the land, constituting a servitude, or in the form of a lease of the property for purposes of its development and the production therefrom of oil, gas and other minerals. Moreover, rights and interests which come into being as the incidental results of these contracts, such as assignments, subleases, mineral royalty interests (sold or reserved), and overriding royalties payable out of the lessee's portion of production have posed problems of interpretation and classification peculiar to the civil law property system. See, for example, Palmer v. Bender, 49 F.2d 316 (W.D.La.1931); Whitehall Oil Co. v. Heard, 197 So.2d 672 (La.App.1967, mineral servitudes and mineral royalties); Yiannopoulos, Civil Law of Property, 1966, Sec. 99, p. 284; Note, 39 Tul.Law Rev. 922 (1965); Campbell, "Principles of Mineral Ownership in the Civil Law and Common Law Systems", 31 Tul.Law Rev. 303 (1957); Tucker,

"Sublease and Assignment: Some of the Problems Resulting from the Distinction," Third Annual Institute on Mineral Law, p. 176 (La. State University, 1955); Moses, "The Distinction Between a Sublease and an Assignment of a Mineral Lease in Louisiana," 18 Tex. Law Rev. 159 (1939); Comment, "The Juridical Nature of Oil and Gas Rights in Louisiana," 9 Tul.Law Rev. 275 (1934–1935); Note, 2 Tul.Law Rev. 65 (1917).

The mineral lease is the most common vehicle used to obtain development of lands for oil, gas and other minerals, and development of the law in this area has been at times inconsistent and confusing; the legal nature of this contract in particular being the subject of constant "clarification". The jurisprudence as it had evolved up to 1936 was marshalled and what has for many years been regarded as a definitive holding by the Louisiana Supreme Court was handed down in Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846 (1936). There it was held that a "mineral lease" was in fact a "lease" and that the rights acquired by the lessee were purely personal, not such as would permit him to institute a petitory action without the concurrence or consent of his lessor. The decision was overturned procedurally by the enactment of Act No. 205 of the General Assembly of Louisiana for the year 1938, which classified oil, gas and mineral leases as real rights and provided that they could be protected, asserted and defended in the manner provided by laws relating to the ownership and possession of immovable property. This Act gave rise to the contention that the holders of such lease rights enjoyed a *jus in re*, a proprietary right or interest in the land itself; but in Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949) the Court held that the rights conferred were procedural and remedial in nature and did not affect substantive rights flowing from such contracts. The reaction to this decision

was the amendment of Act 205 of 1938 by Act No. 6 of the Second Extra Session of the General Assembly of Louisiana for the year 1950, which added the proviso that:

"This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate."

The entire provision was incorporated into the Revised Statutes of 1950 as R.S. 9:1105.

The hope of the industry that mineral leases would thereafter be classified and treated as real rights in the property affected thereby, or as a separate proprietary interest in the land, was short lived. Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958) followed and reiterated the rule that such contracts are to be considered as leases giving rise to personal rights between the lessor and the lessee and governed by the articles of the Louisiana Civil Code pertaining to leases. Citing In re Morgan R. & S. S. Co., 32 La.Ann. 371 (1880), the Court made it clear that the lessee became possessed of a *jus ad rem*, not a *jus in re*, a right *upon* the thing (the land subject thereto) rather than a *proprietary interest in it*. Much of the language employed by the Court in reaching this conclusion gives the impression that the leasehold interest should be regarded as a personal right upon the land, but careful analysis reveals that this language is nothing more than obiter dicta. The result reached, that rights granted mineral lessees by LSA–R.S. 9:1105 did not render mineral leases amenable to the liberative prescription of ten years under Article 3529 or Article 3546 of the Louisiana Civil Code of 1870, (LSA–R.C.C. Arts. 3529, 3546), applicable to servitudes, did not require such an interpretation.

 The Court has since 1936 consistently held that the mineral lease is to be considered in no other light than that of lease and the rights and obligations between the parties governed by the articles of the Code dealing with leases. Royalties provided for after production, either during or following the primary term, are considered as rent, fruits of the land, falling into the community of acquets and gains between husband and wife even though production is obtained from the separate property of the husband, Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952); the lease can be forfeited or cancelled on demand of the lessor for nonpayment of royalties (rent), Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956); Bollinger v. Texas Co., 232 La. 637, 95 So.2d 132 (1957). These are but two examples from the legion of cases in which the appellate courts of this state have held to this view; others dealing with different aspects of the relationship are: Calhoun v. Gulf Refining Co., 235 La. 494, 104 So.2d 547 (1958); Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473 (1942); Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336 (1940); Martel v. Hunt, 195 La. 701, 197 So. 402 (1940). The list could be extended indefinitely. In all of these cases, moreover, the Court recognized that mineral leases were to be considered as incorporeal immovable property. See also Art. 1997, Louisiana Civil Code, the third paragraph of which states that an obligation is " * * * real when it is attached to immovable property, and passes with it into whatever hands it may come, without making the third possessor personally responsible."

 Able counsel for defendants contend that more recent enactments by the Legislature in adopting the 1960 Code of Civil Procedure, particularly Article 3664, and more recent decisions of the courts have changed the nature of the rights obtained by a mineral lessee. We do not agree that any change has taken place. What has happened is that the Louisiana Supreme Court in the recent case of Succession of Simms, 250 La. 177, 195 So.2d 114, on rehearing (1966), recognized that under Articles 463, 470, 2010, 2012 and 2015 of the Louisiana Civil Code of 1870, the law has always been that incorporeal things, such as the rights acquired by a lessee, which are themselves not susceptible of the quality of movables or immovables are placed in one or the other of these two classes of property *"according to the object to which they apply"* (Art. 470). And since mineral leases apply to immovable property they give rise to obligations exercisable upon the land that are purely real and for which the property itself is liable (Arts. 2010 and 2012), a position fortified by the provision of Article 2015, which reads:

"Not only servitudes, but *leases* and all other rights, *which the owner has imposed on his land * * * form real obligations* which accompany it in the hands of the person who acquires it * * *." (195 So.2d at 128, emphasis supplied by the Court.)

How these articles were overlooked in the long history of the development of Louisiana mineral law is not explained, but the Court has had the last say, not the legislature as counsel suggest. We note that the French Civil Code had no articles corresponding to Articles 470, 2010, 2012 and 2015 of the Louisiana Civil Code.

 The Simms case does not change the conclusion of this court that such incorporeal rights, real though they may be, do not constitute a *jus in re* so as to confer upon the lessee a proprietary interest *in* the land. The lease is, rather, a *jus ad rem,* defined as follows:

"JUS AD REM. A term of the civil law, meaning 'a right to a thing', that is, a right exercisable by one person over a particular article of property in virtue of a contract or obligation incurred by another person in respect to it, and which is enforceable only

against or through such other person. It is thus distinguished from *jus in re,* which is a complete and absolute dominion over a thing available against all persons." Black's Law Dictionary, Fourth Edition, West 1951.

While the Court sharply circumscribed the earlier decisions of Glassell and Reagan in the Simms case, restricting them to the bare bones of the results reached, it did not overrule such results. Compare: In re Morgan R. & S. S. Co., supra; Calhoun v. Gulf Refining Co., supra; Tinsley v. Seismic Explorations, Inc., 239 La. 23, 117 So.2d 897 (1960).

We find nothing inconsistent with this conclusion in the cases relied upon by defendants in addition to Simms, viz: Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963); Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7 (1963); and Berwick Mud Company, Inc., v. Stansbury, 205 So.2d 147 (La.App.1967). In fact, they are entirely in accord with the view that rights held by a mineral lessee are incorporeal immovable property. Moreover, since *Simms,* the Louisiana courts have continued to apply the articles of the Code pertaining to leases to these contracts, notably in Melancon v. Melancon, 199 So.2d 573 (La.App.1967); and Fontenot v. Sunray Mid-Continent Oil Company, 197 So.2d 715 (La.App.1967).

 This brings us to a consideration of the effects of the assignment executed by Beck to Sunray. Article 2725 of the Louisiana Civil Code of 1870 provides:

"The lessee has the right to under-lease, or even to cede his lease to another person, unless this power has been expressly interdicted.

"The interdiction may be for the whole or for a part; and this clause is always construed strictly."

There is a sharp distinction between an assignment of a lease and a sublease, recognized in the jurisprudence. In the case of a sublease a new and, in a sense, separate contractual relationship of lease exists between the original lessee and the sublessee. There can be no actions on the contract between the original lessor and the sublessee because there is no privity between them; there are two contracts, the original lease and the sublease, only the original lessee is a party to both. Thus, suit for cancellation of a lease cannot be brought against the sublessee by the landowner, his action is against the original lessee, with the sublessee a necessary party. Where there is an assignment of the lease, however, the assignee is liable *to the original lessor* for the obligations of the original lessee which he has assumed completely. To sublease is to lease in whole or in part the thing of which one is the lessee, with reservation of an interest in it by the original lessee, or sublessor; while to assign a lease is to *sell* it. Broussard v. Hassie Hunt Trust, 231 La. 474, 91 So.2d 762 (1956); Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 (1931); Smith v. Sun Oil Company, 165 La. 907, 116 So. 379 (1928); Walker v. Dohan, 39 La.Ann. 743, 2 So. 381 (1887). See: Mouton, A Legal Mineralogy, Title 11, pp. 64 et seq.; Daggett Mineral Rights in Louisiana, Sec. 33, pp. 124 et seq. (1939); Tucker, "Sublease and Assignment: Some of the Problems Resulting from the Distinction", Third Annual Institute of Mineral Law (La. State University, 1955); Moses, "Assignment and Sublease of Oil, Gas and Mineral Leases in Louisiana: Their Differentiation", 23 Tul.La.Rev. 231 (1948); Moses, "The Distinction Between a Sublease and an Assignment of a Mineral Lease in Louisiana", 18 Tex.Law Rev. 159 (1939); Planiol, Traité Élémentaire De Droit Civil, Vo. 2, n.° 1747 et seq. (11 ed. 1939, trans. Louisiana State Law Institute, 1959).

 On the basis of the record before us, we find that the transaction of

June 19, 1963, whereby Beck transferred his interests in the lease to Sunray is an assignment of that lease. If his rights were proprietary in essence, conferring absolute dominion over an incorporeal immovable mineral estate *in* the land, which must be implied from defendants' contentions, the matter would end here. But, as we have seen, the lease conferred only rights exercisable *upon* the land, classified as incorporeal real rights because of the object to which they are attached. This being the case, the obligations ancillary to and which flow from the lessee's contractual undertaking with plaintiffs to develop the land according to the terms of the contract are not extinguished unless it be by one of the methods provided by law. We deal here with the obligation to pay the rent (royalties) "at the terms agreed on", and to enjoy the thing leased "as a good administrator, according to the use for which it was intended by the lease." Article 2710, Louisiana Revised Civil Code of 1870.

There is a paucity of jurisprudence on the subject; the question of the original lessee's obligations to the original lessor after assignment of a mineral lease is res nova so far as we are able to determine. A review of the general provisions of the Code dealing with the manner in which obligations are extinguished, Title IV, Chap. 5, indicates that defendants' position that Beck had no further interest in the lease and that the assignees are substituted in his stead might be sustained in certain factual situations on the theory of novation. See Articles 2130 and 2185 through 2198.

The lease contains no provision which can be construed as consent of the lessors to the release of the original lessee from his obligations to them in the event of its assignment and a substitution of the assignee in his stead, nor does the record reflect any evidence that subsequent thereto the plaintiffs expressed their intention to do so in an unequivocal manner by implication or otherwise. There was no novation in this case. See and compare: Zaeringer Realty Co. v. New Orleans Hops, Malt & Extract Co., 10 La.App. 648, 121 So. 193 (1929); Knapp v. Guerin, 144 La. 754, 81 So. 302 (1919); J. Davidson Hill & Co. v. Bourcier, 29 La.Ann. 841 (1877); Vignie v. Gouax & Viala, 14 La.Ann. 344 (1859).

We are referred to the case of Grundmann v. Trocchiano, 13 La.App. 277, 127 So. 748 (La.App.1930) by plaintiffs, and our independent research discloses Succession of Stone, 31 La.Ann. 311 (1879), neither of which decisions are dispositive of the issues here. The problem is recognized by at least one author, in "Sub-lease and Assignment: Some of the Problems Resulting From the Distinction", Tucker, Third Annual Institute on Mineral Law (La. State Univ., 1955) p. 176 et seq. There it is said:

> "Whether it be an assignment or a sub-lease, the primitive lessee remains bound by the obligations of the lease to the original lessor. In the case of a sub-lease, to which the original lessor is a complete stranger, and an assignment does not relieve the primitive lessee of his obligations without the consent of his creditor. It would seem to be logical, also, that in the case of a sub-lease, the primitive lessee would retain the power to require of the primitive lessor the execution of his obligations under the original lease, while in the case of an assignment, he would have no such rights, because he had transferred them to the assignee."

However, commentators on the French Civil Code, from which the Louisiana codal articles are derived (the pertinent provisions of which are almost identical), are in accord in their conclusion that the original lessee remains bound

on the obligations of the lease to his lessor even though the lessee has assigned the lease. Beudant, Cours de Droit Civil Francais, Tome XI—"La Vente, Le Louage Des Choses," n° 501, p. 447, n° 503, p. 452 (Paris, 2ᵉ ed. 1938); Baudry-Lancantinerie et Wahl, Traite de Droit Civil, Tome 18 & 19—"Du Contrat de Louage", n° 1131, pp. 594–595, n° 1137, p. 598 (Paris, 2ᵉ ed. 1900); Baudry–Lacantinerie, Precis de Droit Civil, Tome III—"De Contrat de Louage," n° 694, p. 421 (Paris 3ᵉ ed. 1889); Troplong, De L'Echange et du Louage, n° 128, p. 78 (1841); Pothier, Contrat de Louage, n° 282, p. 153 (Paris, 1806). To same effect, see, La Haye et Vankerckhove, Le Louage de Choses, n° 258–260, p. 158, n° 262, p. 159 (Bruxelles, 1964). See, Planiol, supra, n° 1753. The reasons given, which we will not discuss in detail are sound and we agree with the conclusion. In Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33 (1904), it is observed:

"In choosing a tenant owners exercise some degree of judgment. There are questions of ability to pay, matters regarding the taking care of the property. There are some tenants more careful than others. For these and other similar reasons tenants are sometimes selected and some restriction placed upon them as to sublease or transfer of the lease."

If the right to sublease or assign is *not* restricted, these same considerations provide additional reasons to hold the primary lessee answerable to the landowner for a breach of his contractual responsibility under the lease by a negligent or careless assignee.

For the foregoing reasons, our previous judgment should, on new trial, be recalled, vacated and set aside insofar as it dismisses defendant Beck from this suit.

Having reached this conclusion, the case of American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R.2d 738 (1951) requires this court to remand the case sua sponte as the controversy does not present a "separate and independent claim or cause of action" against defendants Sunray and General American as must be found to support removal based upon diversity under Title 28 U.S.C.A. Sec. 1441(c), 1447(c). Federal Practice & Procedure, Barron and Holtzoff, Vol. 1, Secs. 105, 109. The cause of action which these plaintiffs have against Beck is identical to the cause of action against these defendants.

It is not necessary, in our opinion, to make any determination of the question of whether or not Beck, as primitive lessee, is a necessary or indispensable party to a suit against his assignees for cancellation of the lease assigned. See: Humble Oil & Refining Co. v. Jones, 241 La. 661, 130 So.2d 408 (1961); Jamison v. Superior Oil Co., 220 La. 923, 57 So. 2d 896 (1952).

Furthermore, we feel that it is more appropriate to refrain from any action on the motion for summary judgment filed by Sunray and General American. All of the motions before the Court involve matters of State law, and a more authoritative decision of the issues, particularly the novel question of Beck's responsibility, will result.

Counsel for plaintiffs will prepare and submit for signature an appropriate order in keeping with the views herein expressed and in compliance with Rule 9(e), United States District Court Rules, Western District of Louisiana.