United Lands Company, Inc., is the owner of a large tract of land in Ascension Parish in this State. On February 11th, 1927, it entered into a contract with Gulf Refining Company of Louisiana under which the Gulf Company was granted the right to explore the said land for the production of oil, gas and other minerals. Under this contract the Gulf Company agreed to pay to the United Company a one-eighth royalty on such minerals produced from the said land. The contract contained a paragraph reading as follows:
"All provisions hereof shall extend to and bind the successors and assigns (in whole or, to that extent, in part) of the parties hereto, respectively; but no change in ownership of the land or part thereof, the minerals or interest therein, shall impose any additional burden on the Company (Gulf Refining Co.) or impair the effectiveness of any payment made as above provided;"
It was also provided that the Gulf Company and its assigns should have the right "to use, free of charge, oil * * * from the land in conducting operations thereon."
By several transfers or assignments, Pan-American Production Company became vested with all of the rights and undertook all of the obligations of the Gulf Company, the original grantee.
On August 6th, 1940, the Pan-American Production Company granted to F.O. Roshko, his successors or assigns, all of the rights which it had in the said contract in so far as those rights affected a small portion of the land covered by the original contract; this small portion being described as follows:
"East half of Southeast Quarter of Northwest Quarter (E. 1/2 of SE 1/4 of NW 1/4) of Section Fifteen (15), Township Ten (10) South, Range Four (4) East."
Roshko commenced drilling operations on this land and in those operations used oil which he purchased from the Pan-American Production Company and which had been produced, not on the land covered by Roshko's contract but on that part of the original tract retained by the Pan-American Production Company.
Pan-American Production Company refused to pay to United Lands Company Inc., the original grantor, the one-eighth royalty which the United Lands Company, Inc., claims is due to it on the oil sold to Roshko, taking the position that, since the oil sold to Roshko was taken from the land included in the original contract and was used in conducting drilling operations on that land, under the terms of the contract which we have already quoted the said oil was free of royalty. It is admitted that the oil so used was purchased for the price of $2,271.63 and United Lands Company, Inc., claims that it is entitled to one-eighth of this, or $283.95, with interest on each amount which makes up this sum from the date on which each said amount became due. *Page 520 
Pan-American Production Company, as we have stated, admits that it sold the said oil, and, for the reasons given, denies liability for the amount claimed but admits that a portion of the oil sold to Roshko was not used in drilling operations and that on this oil there is due to the United Lands Company, Inc. a royalty of $48.47, and that this amount has not been tendered to plaintiff.
There was judgment for United Lands Company, Inc., for $283.95 as prayed for and defendant has appealed.
Counsel for both parties devote considerable discussion to the question of whether the contract between Pan-American Company and Roshko should be designated as a sublease or as an assignment. Counsel for plaintiff argue that it is an assignment because while it does not include all of the land which was leased to the Pan-American Production Company, it constitutes a total divestiture by that Company of all of its rights to the small tract and counsel point to the fact that the Pan-American Production Company in its contract with Roshko retained no overriding royalty. They say that this fact places the case within the rule announced in Roberson et al. v. Pioneer Gas Co.,173 La. 313, 137 So. 46, 48, 82 A.L.R. 1264, in which the Supreme Court characterized the contract under consideration as an assignment because no overriding royalty was retained. There the court said:
"* * * The reason for that is that the defendant thereby disposed absolutely of its interest in the lease on the 40 acres of land, and left no contractual relation whatever between the parties, or obligations on the part of the assignee in favor of the assignor * * *".
But counsel for defendant insist that it is not held in that case that an overriding royalty is the sine que non, without which such a contract is an assignment and with which it is a sublease, and they maintain that what the court there held was that in order that such a contract be looked upon as an assignment, it must not retain to the sub-grantor any right such as an overriding royalty or any other right. In other words, they contend that although such a contract may not retain to the sub-grantor any overriding royalty, still it is a sublease and not an assignment if it retains in the sub-grantor any other rights or if it places upon the sub-grantee any other obligations in favor of the sub-grantor. And it is true that the court, after finding that the contract there did not stipulate for an overriding royalty, and after holding that the said contract constituted an assignment and not a sublease, added this:
"The distinction between an `assignment of lease' and a `sublease' is that in an assignment the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as affects the property subleased by imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor."
This language may indicate that any other obligation may be sufficient to classify such a contract as a sublease even though no overiding royalty is retained. In Smith v. Sun Oil Company,165 La. 907, 116 So. 379, the court held a sub-contract somewhat similar to this one to be a sublease. It must be conceded that the ratio decidendi there was that there was retained by the sub-grantor an overriding royalty but the language used suggests that if the sub-contract places upon the sub-grantee an obligation such as to commence drilling within a certain time or provides for the penalty of forfeiture to the sub-grantee if drilling is not commenced within that time or if the contract contains any similar stipulations, then such a contract should possibly be classified as a sublease.
We are not at all certain whether under these and other authorities this contract should be called an assignment or whether it should be designated a sublease. The Pan-American Production Company disposed entirely of all of its rights in the small tract covered by that contract and it retained no overriding royalty but it did stipulate that Roshko must, within a fixed time, drill on that particular piece of land and it also provided for reversion to the Pan-American Production Company if Roshko should not drill in accordance with the sub-contract.
However, we are of the opinion that whether the contract between the Pan-American Production Company and Roshko was a sublease or an assignment is not a question which must be determined here because we think that whether the royalty is due by the Pan-American Production Company on oil sold depends upon the proper interpretation of the original contract between *Page 521 
the United Lands Company and the Gulf Refining Company, and that in interpreting that contract we should attempt to ascertain the intention of the parties. It is well settled that in interpreting contracts involving leases, they should be construed "most strongly against the lessee and in favor of the lessor." This was held in Rives, et al. v. Gulf Refining Company of Louisiana,133 La. 178, 62 So. 623, and as authority for this view the court cited the work of Mr. Thornton on the law relating to oil and gas. This view was also expressed in Le Rosen v. North Central Texas Oil Co., Inc., 12 La.App. 15, 123 So. 430. See also 16 Tulane Law Review 636 in which appears the following: "* * * doubtful clauses in oil and gas leases are interpreted in favor of the lessor and against the lessee. * * *".
According to Mr. G.P. Bullis in an article entitled: Recent Louisiana Jurisprudence Regarding Landowners' Rights in a Proven Oil or Gas Field, 14 Tulane Law Review 423, it is stated that this rule that such leases are construed strongly in favor of the lessor was adopted "because leases are usually prepared by lessees." If this is the reason for the rule, we are not at all sure whether it should be applied here because we cannot say whether this lease was prepared by the grantor or by the grantee.
Nevertheless, we think that it was not the intention of the parties to that lease that the grantee or the assigns of the grantee should receive payment for oil produced on the land and yet not be required to turn over to the grantor the one-eighth royalty stipulated for.
Of course, it is true that the United Lands Company is interested in the production of oil on the land, and that it actually makes no difference to that company whether it is produced by the Pan-American Production Company on land retained by it or by Roshko on land turned over to him, and that therefore it may be argued that since it agreed that it would not receive royalty on any oil produced on the land, if used on the land in exploring for other oil, it should not be heard to contend that it should receive payment for this oil. We think that the argument is a very strong one, but we think also that it is overcome by the strength of the other argument which is that the Pan-American Production Company should not be allowed to sell oil and then take the position that it should not pay royalty thereon because the oil was used by someone else in drilling on the land covered by the original contract.
We are told that this identical question has not heretofore been presented to the courts, and our own research has failed to bring to light any other cases in which it has arisen. We wish that we could have been aided by the views of other courts. Our own view is that the royalty should be paid.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.