James Ralph MORELAND, Individually, and for others similarly situated

v.

RUCKER PHARMACAL COMPANY, INC., and Bank of the Southwest.

Civ. A. No. 18105.

United States District Court,
W. D. Louisiana,
Shreveport Division.

May 11, 1973.

Robert Roberts, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for plaintiff.

Robert G. Pugh, Pugh & Nelson, Shreveport, La., for Rucker Pharmacal Co., Inc.

T. Haller Jackson, Jr., Katherine Brash Jeter, Tucker, Martin, Holder, Jeter & Jackson, Shreveport, La., for Bank of the Southwest.

## RULING

DAWKINS, Chief Judge.

This action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure as a class action seeking declaratory and injunctive relief and, incidentally, damages. Jurisdiction is based upon diversity and more than $10,000 being in controversy, exclusive of interest and costs.

Defendant Bank of the Southwest has filed a motion to dismiss for lack of jurisdiction over the person, insufficiency of service of process, and, alternatively, for improper venue. Defendant Rucker Pharmacal Company, Inc., filed a motion to dismiss the suit as a class action and, of course, reserves its rights under Rule 12(b). Subsequently, plaintiff filed a motion for an order to show cause and decree fixing liability of defendant Rucker for attorney's fees.

This ruling concerns only the defendant Bank of the Southwest's motion, pretermitting the class action and attorney fees issues until a later date. Accordingly, any reference to plaintiff as not being a true representative of the class allegedly involved should not be

considered as a projection of the outcome of the motion to dismiss the suit as a class action. Thus restricted, we therefore shall not refer to the plaintiff as a class but only as to named plaintiff himself.

Plaintiff formerly was an employee of defendant Rucker and was the owner of 143 shares of its Class C common stock. Through stock dividends and stock splits by corporate action taken by Rucker, the original 143 shares had increased to 688 shares as of March 9, 1972.

Allegedly as a condition for continued employment, May 3, 1969, Moreland was required to enter into an agreement with Rucker whereby he would purchase stock from the company and the company would sell the stock to the employee with the right to reacquire the stock upon the "happening of certain events."

In the fall of 1971, Rucker began initial inquiries and preparations to sell its stock to the public, the initial sale to consist of newly issued stock and one-fourth the amount of stock owned by each of Rucker's stockholders. In connection therewith plaintiff executed a power of attorney to Johnny B. Rucker, Rucker's President, or his wife, Cornelia A. Rucker, an officer and director of Rucker. Additionally, a letter of transmittal and custody agreement was forwarded to the Bank of the Southwest presumably on behalf of all employees contributing one-fourth of their stock. Plaintiff received a letter from Rucker acknowledging receipt of 172 shares of Rucker stock. An underwriting agreement was entered into with du Pont, Glore, Forgan, Inc., as representative of the several underwriters named therein.

One hundred seventy-two shares of common stock of Rucker, owned by plaintiff, was sold to the underwriters for a price of $15.71 per share. The net amount received by plaintiff from the bank, after deduction of his proportionate share of expenses of the sale, was $2,639.88. Thereafter, plaintiff left Rucker's employ and subsequently Ruck-er tendered an offer to purchase from plaintiff the remaining shares of common stock owned by him then, and now presumably still in possession of the Bank of the Southwest in accordance with the custody agreement. Plaintiff has requested the bank to return said stock (*i. e.*, the certificates evidencing plaintiff's ownership of the shares). The bank, however, has refused to return such certificates, totaling 516 shares. Plaintiff contends this is a violation of the custody agreement; and the bank's refusal is predicated upon direction from Rucker not to return said stock certificates to plaintiff.

We pretermit any disposition of the jurisdictional question because our disposition of the venue issue satisfies us that this action has been brought in an improper forum as concerns the bank.

Special venue provisions have been enacted concerning suits against national banks. They are found at Title 12 U.S.C. § 94:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established or in any State, county or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

Although the language is permissive, the jurisprudence that has evolved thereunder strictly and narrowly has construed this provision to make no exception save one, see Helco, Inc., v. First National City Bank, 470 F.2d 883 (3rd Cir., 1972) and the jurisprudence cited therein. This exception was carved out in Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880). Addressing the quoted statute, the Court stated:

"This, we think, relates to transitory actions only, and not to such actions as are by law local in their character. Sect. 5136 subjects the banks to suits

at law or in equity as fully as natural persons, and we see nowhere in the banking act any evidence of an intention on the part of Congress to exempt banks from the ordinary rules of law affecting the locality of actions founded on local things. . . . Local actions are in the nature of suits *in rem*, and are to be prosecuted where the thing on which they are founded is situated. To give the act of Congress the construction now contended for would be in effect to declare that a national bank could not be sued at all in a local action where the thing about which the suit was brought was not in the judicial district of the United States within which the bank was located. Such a result could never have been contemplated by Congress."

The Court went on to say that State law is determinative of whether the action is local or transitory.

It is obvious that we must determine whether or not this action is local or transitory as concerns this bank. A cursory glance at Moreland's complaint reveals that he seeks damages from both defendants. Clearly, this is of a transitory nature; however, in his brief, plaintiff has conceded this and desires this Court to allow him to amend, deleting all reference to damages, thereby reducing the complaint against the bank to one solely for possession or ownership of the stock certificates involved in this action which are in possession of the bank. Accordingly, we approach this problem in the manner requested by plaintiff, as though the complaint had made no reference to damages.

"The distinction with respect to venue as between local and transitory actions has been said to be as old as actions themselves, and the rules distinguishing between them are well settled, although as a practical matter it is not always easy to ascertain whether an action is one or the other." 92 C.J.S. Venue § 7.

A transitory action may be brought in any court of general jurisdiction in any district wherein defendant can be found and served with process, whereas in a local action the plaintiff must bring suit in the court designated, if not statutorily required to do otherwise. Accordingly, the action must be brought in the county or district in which the subject matter lies or where the cause of action arose. 92 C.J.S. Venue § 8:

"The test as to whether an action is transitory or local is not, as a general proposition, the subject causing the injury, but the object suffering the injury, or, as the distinction is otherwise stated, it exists in the nature of the subject of the injury and not in the means used or the place at which the cause of action arises. Transitory actions are universally founded on the supposed violation of rights which, in contemplation of law, have no locality. They are personal actions, that is, they are brought for the enforcement of purely personal rights or obligations. If the transaction on which the action is founded could have taken place anywhere, the action is generally regarded as transitory; but if the transaction could only have happened in a particular place, or, as it is sometimes expressed, when the cause of action could only have arisen in a particular place, the action is local. Some authorities, considering the effect of the distinction, define transitory actions as actions which may be tried wherever defendant may be found and served.

"Local actions include, as a general proposition, all actions in which the subject or thing in controversy, or thing sought to be recovered, is in its nature local. Accordingly, proceedings have been held to be local if *in rem*, and where the effect of the judgment could not be had if venue be laid in the wrong place.

\*    \*    \*    \*    \*    \*

*"Statutory regulation.* Regardless of their classification at common law, actions may be made local or transitory by statute. Thus, in some jurisdictions, those actions which are triable where defendant resides are termed 'transitory,' and those triable where the subject matter is situated or by statute termed 'local;' and this may be so whether the action is of an equitable nature or not. Again, actions are considered to be local where the statute prescribes the particular county in which they must be brought. In some jurisdictions, the common-law division of personal actions into local and transitory does not exist; only those actions are local which are made so by statute."

■ In Louisiana, actions are classified by Article 422 of the Louisiana Code of Civil Procedure: the action may be either personal, mixed, or real. The terms "real" or "personal" under Louisiana law correspond roughly to the common-law concepts of "rights *in rem*" and "rights *in personam*." Chateau Lafayette Apartments, Inc., v. Meadowbrook National Bank, 416 F.2d 301 (5th Cir., 1969). Article 422 also defines a real action as ". . . one brought to enforce rights in, to, or upon immovable property."

■ Apparently, there is no real action in Louisiana to determine ownership or interest in movables (here plaintiff asks us to determine the ownership of shares of Rucker; such shares are movable under Louisiana law. La. Civil Code Article 474).

Historically, this has not always been true: Professor Yiannopoulos, in his treatise, points out that the Louisiana Civil Code contains provisions dealing with or presupposing the revindication of movables, *i. e.*, the ownership of corporeal movables and right to possession and enjoyment thereof (movable real rights) protected in Civil Law by rules of the law of property and rules of the law of obligations. See Yiannopoulos, Civil Law of Property, Section 142, et seq. (1966). This action, he submits, is termed as a "real" action because it is available for protection and enforcement of a real right. He concludes, even though the Code of Civil Procedure does not designate it as a real action, that it is contemplated by the Civil Code and therefore must be regarded as an innominate action. The jurisprudence is in a different posture:

"Louisiana Courts have not always distinguished clearly among the various theories of recovery, nor have they succeeded in developing an entirely consistent pattern for the protection of movable real rights. This may be partly due to the lack of systematic elaboration on the provisions of the Civil Code by Louisiana writers and partly due to the gradual adoption of common-law remedies. Borrowings from that system of law in this area may well amount to something more substantial than interstitial seepage. As a result, the law 'is presently in a state of confusion,' which could be expected because the common-law remedies 'are based on an entirely different conceptual framework of property protection.'" Yiannopoulos, *supra*, at § 144.

A person who has lost possession of movable property has three traditional remedies under the Civil Law for recovery of goods:

"An owner could petition for revindication of a thing by means of a *vindicatio* against the present possessor, and could follow the movable into the hands of any third person, reclaiming it merely by asserting his ownership. *Conditio* was available to one who had transferred to the defendant a movable which the defendant had no claim

to retain. Unlike the *vindicatio*, which was an action *in rem*, the *conditio* was an action *in personam*, based on a quasi-contractual obligation of the defendant to return the thing. Finally, one who had an interest in a thing which had been wrongfully taken by another, and who did not contemplate recovering it, had an *actio furti* against the wrongdoer to recover penal damages." Note, Movable Property—Remedies of One Out of Possession of Movables, 37 Tul.L.Rev. 843 (1962–63).

The method of protecting rights and interests in chattels at Common Law basically is different from that of Civil Law. Common Law has never provided a real action for the recovery of chattels; all common-law actions concerning rights in chattels traditionally have sounded in tort and today the tort of conversion dominates this area of the law. Louisiana Courts have destroyed the careful balance between the three remedies provided by the Civil Law to recover movables and has maximized their concurrence.

"The common law of conversion has been imported, creating a strict delictual liability concerning movables instead of one based on fault. It necessarily follows that the tort remedy of one dispossessed of movable property has been extended beyond its original bounds. Today actions for the recovery of movable property are no longer treated as real actions based on ownership, but rather as personal actions based on a delictual obligation for wrongful detention." See Movable Property, *supra,* at p. 846.

The specific jurisprudential statement to this effect is:

"To the contrary, of course, since the subject matter herein is movable property, this action cannot possibly be a real action (possessory or petitory or

otherwise.) 'Actions tending to recover an immovable, or a real right, or an universality of things, such as an inheritance, are considered as real; while actions for the recovery of a movable or of a sum of money, though accompanied with a mortgage, are not real actions', Article 12, Code of Practice." (Emphasis by the Court.) Lusco v. McNeese, 86 So.2d 226, 228 (La.App. 1st Cir., 1956).

The applicable Louisiana venue provision, here, does not restrict bringing of the action in only one place since it is not classified as a real action according to the jurisprudence.

■ Therefore, as we appreciate this particular situation, venue is not limited in the context that a real action is limited to the Parish where the property is located, *e. g.,* Article 80 of the Louisiana Code of Civil Procedure establishes *mandatory* venue for any action asserting an interest in immovable property or right in, to, or against such property, in the Parish where it is located. *Chateau Lafayette Apartments, Inc., supra.* Although the resulting application of the general venue statutes in this instance would be that the action may be brought only in one Parish, the statute does not limit mandatorily the venue to a specific court, which we think was the intended ruling in Casey v. Adams, *supra.* There, the Court was concerned that plaintiff would not be able to obtain relief against defendant if it could not obtain venue where the property was situated. Here, Moreland may proceed against the Bank at its location.

■ Here the bank was served under the provisions of Louisiana's long-arm statute, LSA–R.S. 13:3201 et seq. The venue provision found at Section 3203 provides:

"A suit on a cause of action described in R.S. 13:3201 may be instituted in the parish where the plaintiff is domi-

ciled or in any parish of proper venue under any provision of the Louisiana Code of Civil Procedure other than Article 42."

Since plaintiff here is an Oklahoma citizen, domiciled there, the action cannot be brought where plaintiff is domiciled, and therefore we must look to some Article other than No. 42. The comment under this section is to the effect that plaintiff has a choice of venue in some cases. It also states that the provision of Article 42(5), La.Code of Civil Procedure, was excluded from the venue locales provided to eliminate contentions that a nonresident may be sued in any Parish of the State. Although a somewhat anomalous situation is created by the circumstances of this action it cannot be contended that this venue provision was confected for the purpose of restricting venue to one certain locale. Here we would be forced to agree with plaintiff that the only other applicable venue Article is No. 72, although no sequestration has been sought, but such result is not mandatorily dictated by the statute.

Understandably, it would be inconvenient for plaintiff to proceed against the Bank of the Southwest where it is located, but this is what Title 12 U.S.C. § 94 requires of him when the action is not a local action under the *Casey* rule. The remedy for this situation must be provided by Congress and not the Courts. Klein v. Bower, 421 F.2d 338 (2d Cir., 1970).

Accordingly, the Shreveport Division of this Court constitutes an improper venue as against Bank of the Southwest, and we hereby grant its motion to dismiss for improper venue. Such dismissal is without prejudice to plaintiff's right to maintain his claim in the Houston Division of the Southern District of Texas.