368 So.2d 726 (1979)
HAWTHORNE OIL & GAS CORPORATION et al., Plaintiffs and Appellants,
v.
CONTINENTAL OIL COMPANY, Defendant and Appellee.
No. 6725.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
Rehearing Denied March 29, 1979.
Writ Granted May 4, 1979.
*727 Taylor Caffery, New Orleans, for plaintiffs and appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Lawrence E. Donohoe, Jr., Lafayette, for defendants and appellees.
Before CULPEPPER, FORET and CUTRER, JJ.
CULPEPPER, Judge.
This action arises from a contract entered into on June 1, 1971 between the plaintiff, Hawthorne Oil & Gas Company, Inc. (hereinafter *728 "Hawthorne"), and the defendant, Continental Oil Company (hereinafter "Continental"). The plaintiff contracted to sell to defendant gas produced from certain lands upon which plaintiff held mineral leases. The contract provides that delivery of the gas occur at specific metering stations constructed by the defendant on the land affected by the plaintiff's mineral leases. In furtherance of this provision, plaintiff also assigns to defendant all "easements and rights-of-way" held by the plaintiff under its leases.
A dispute arose between the parties as to the price which Continental was obligated to pay Hawthorne for the gas. Plaintiff now contends that Continental failed to pay the price agreed upon in the contract and, consequently, seeks to terminate the gaspurchase agreement. This action was filed in Vermilion Parish, where the wells producing the gas under the contract are located. Defendant filed a declinatory exception of improper venue, asserting that since Continental is a foreign corporation, the suit should have been brought in Calcasieu Parish, where its principal place of business is located. The trial court sustained defendant's exception and dismissed plaintiff's suit. Hawthorne appeals.
The central issue presented on appeal is whether venue in this action is governed by the general provisions of LSA-C.C.P. Art. 42(4) or by the mandatory requirement of LSA-C.C.P. Art. 80 that a suit involving an interest in immovable property be brought in the parish where the property is located. Resolution of this question depends upon the scope afforded to Art. 80 in applying that provision and, more particularly, whether the incorporeal right asserted by the plaintiff in this action should be classified as a movable or immovable.
The questions raised by the issue include the following:
(1) By what method is an incorporeal right classified as a movable or an immovable?
(a) What is the test for classification under the Louisiana Civil Code?
(b) How has the jurisprudence of this state affected the utility of the Code's classification in light of certain decisions equating real rights with immovable rights?
(c) Has the Louisiana legislature created a species of incorporeal immovable rights separate from that envisioned under the Civil Code?
(d) Can parties create incorporeal immovable rights by contract in contravention of that system designated by the Civil Code?
(2) When determining venue in an action brought upon rights created by contract, is there a distinction to be made between the object of the right asserted under the contract and the object of the contract?
(3) If there are multiple objects of a right which are both movable and immovable, which category will control when applying LSA-C.C.P. Art. 80?
Continental asserts that venue in this action should be in Calcasieu Parish under the provisions of LSA-C.C.P. Art. 42(4)[1]. Hawthorne contends that LSA-C.C.P. Art. 80 controls and dictates that this suit be brought in Vermilion Parish.
LSA-C.C.P. Art. 80 states in part:
"The following actions shall be brought in the parish where the immovable property is situated:
"(1) An action to assert an interest in immovable property, or a right in, to, or against immovable property, except as otherwise provided . . . ." (Emphasis added)
Under the express terms of this article, the resolution of this case will depend upon whether plaintiff's action asserts such an interest in immovable property as to be governed by Art. 80. If this is the case, Art. 80 requires that the suit be filed in Vermilion Parish.
*729 It is undisputed that plaintiff seeks to assert incorporeal rights as defined by LSA-C.C. Art. 460 [2]. What is at issue is to determine the classification of these incorporeal rights as movable or immovable.
In an excellent post-argument brief, Continental accuses Hawthorne of equating "real rights" with "immovable rights" as these terms are used in certain statutes and jurisprudence. Continental emphasizes the distinction between the classification of rights as real or personal and the classification as movable or immovable, citing Yiannopoulos, Civil Law of Property, Chapter 4, Sec. 60, pgs. 178-179. Because of the importance of these distinctions in deciding the present case, it is necessary to discuss them at some length.
THE CIVIL CODE
Under the Civil Code, the test to determine whether an incorporeal is a movable or immovable is to look to the object of the right asserted. This is clearly provided for in LSA-C.C. Art. 470:
"Incorporeal things, consisting only in a right, are not of themselves strictly susceptible of the quality of movables or immovables; nevertheless they are placed in one or the other of these classes according to the object to which they apply and the rules hereinafter established." (Emphasis added)
See also LSA-C.C. Art. 463[3].
In applying this article, if the object of the right is a movable, the right itself is classified as a movable and if the object is an immovable, the right asserted becomes an immovable.
The jurisprudence has applied the test provided in Civil Code Art. 470 on numerous occasions. In perhaps one of the best analyses of the application of this article, the Fourth Circuit, in Succession of Simms, 175 So.2d 113 (La.App., 4th Cir. 1965), reversed on other grounds, 250 La. 177, 195 So.2d 114, held that rights are to be classified according to their object. The court affirmed its earlier ruling that a mineral lease constituted an immovable right because the object of the lease in question was immovable property. The court determined that the object of the incorporeal classifies it as a movable or immovable in labeling the right in question immovable, but noted that had the object of the lease been movable property, then rights asserted in such a lease would have been classified as movables.
Similarly, the Louisiana Supreme Court has classified incorporeal rights derived from mineral leases and drilling contracts as immovables according to the object to which these rights applied, i. e., the land affected by the lease agreement and the drilling contract. Wilkins v. Nelson, 155 La. 807, 99 So. 607 (1924); St. Charles Land Trust, Achille Guibet v. St. Amant, 253 La. 243, 217 So.2d 385 (1969). In an earlier Supreme Court case, the court had also classified a mineral lease as an incorporeal immovable since the object of the lease was an immovable. The lease and contract involved in that suit was for the sale of gas located beneath the surface, and the court labeled those rights as incorporeal immovables. However, by specifically structuring its decision on the fact that the gas in question was located beneath the surface, the court seemed to imply that a contract which had as its object gas reduced to the possession of some third party would create incorporeal movable rights, since the gas itself is classified as a movable. Vander Sluys v. Finfrock, 158 La. 175, 103 So. 730 (1925). Such reasoning supports the defendant in the case at bar because an object of the contract in dispute is gas reduced to the possession of the plaintiff, a movable.[4]
*730 Clearly, the statutory and jurisprudential classifications reveal that in compliance with the Civil Code, the test to determine whether an incorporeal is a movable or immovable is to discover the object of the right asserted. However, although the jurisprudence lends positive support to the application of Civil Code Art. 470, the courts have inconsistently utilized this article, thus creating confusion by misapplying the dichotomy between real and personal rights and the division of things into movables and immovables.
LOUISIANA JURISPRUDENCE: THE CONFUSION BETWEEN REAL RIGHTS AND IMMOVABLE RIGHTS
Professor Yiannopoulos, in his discussion of Civil Code Art. 470, notes that the classification of rights into movables and immovables should not be confused with the parallel classification into personal and real rights. Yiannopoulos states: "The first distinction is based on the object of the rights while the second is grounded on their nature." Yiannopoulos, Civil Law of Property, Chapter 4, Sec. 60, p. 178. Under this analysis, as supported by the Civil Code, both personal and real rights can thus be either movable or immovable, depending on their object.
Although the classification of rights into movables and immovables is clear theoretically, the interpretation the courts have given to the Civil Code has created a difficulty in the practical application of the Code. The source of the trouble, as Yiannopoulos notes, is that the term "incorporeal immovables" has been equated in the jurisprudence with a "real right", and both concepts have been regarded as exclusively applicable to real rights over immovables. Yiannopoulos, Civil Law of Property, Chapter 4, Sec. 61, p. 180. The effect of such confusion is that some courts, in classifying a right as "real" have erroneously equated that right with immovables. Such an interpretation ignores the test of Civil Code Article 470 to look to the object of the right, not to whether the right is "real."
Yiannopoulos believes that much of the confusion has been created by different interpretations given to LSA-C.C. Art. 471, which enumerates several incorporeal real rights considered immovable from the object to which they apply.[5] Despite the inconsistency of some decisions in discussing this provision, it is generally conceded that the enumeration in Art. 471 is merely illustrative and not exclusive. Thus, the mere fact that Art. 471 lists only certain incorporeal real rights as immovables does not preclude other incorporeal real rights from being classified as movables under Civil Code Art. 470. See: Yiannopoulos, Civil Law of Property, Chapter 4, Sec. 61, p. 181.
An understanding of this problem begins with a recognition that patrimonial rights (those susceptible of pecuniary evaluation) are divided into either "personal" or "real" rights. Personal rights have been classified in the Civil Code and in the jurisprudence as those rights which "define man's relationship to man and refer merely to an obligation one owes to another." Reagan v. Murphy, 235 La. 529, 105 So.2d 210, 214 (1958). However, the term "real rights," although employed throughout the Civil Code[6] and in the jurisprudence has yet to receive any definitive legislative or judicial definition.
In Reagan v. Murphy, supra, the court attempted to classify real rights as those synonymous with a proprietary interest in a thing, reflecting ownership. Other courts have been less precise, creating different categories of real rights: One referring to the "jus in re" where there is evidence of complete and absolute dominion over a thing, and the other, "jus ad rem" (i. e., "a right to a thing") when a right is exercisable by one person over property by virtue of *731 a contract or obligation incurred by another person with respect to that property. Mire v. Sunray DX Oil Company, 285 F.Supp. 885 (D.La.1968). Despite this confusion, Yiannopoulos suggests that the Louisiana jurisprudence has apparently intended to define real rights as a dismemberment of ownership, such being the more consistent approach in line with civilian theory and historical development. Yiannopoulos, Civil Law of Property, Chapter 6, Sec. 90, pp. 264-265. Clearly, under such a definition, the mere fact that a right is "real" does not prevent it from also being "movable." These classifications remain two separate concepts.
That area of law which has produced the most confusion between real rights and immovable rights, and the one with the most significance for the present problem, has been those cases concerning the classification of mineral rights as incorporeal real immovables. The Louisiana Supreme Court initially classified mineral leases as personal rights. Gulf Refining Company of Louisiana v. Glassell, 186 La. 190, 171 So. 846 (1936). However, the Louisiana Legislature passed Act 205 of 1938,[7] overruling this decision and providing that mineral leases are real rights and incorporeal immovable property. The result has been that many cases have equated real rights with immovable incorporeal rights, holding the two classifications as inseparable. In Succession of Simms, supra, while upholding the venue of a suit brought to dispose of succession property, including mineral royalty interests, the court stated that real rights and incorporeal immovables are not separate concepts. The court noted that a mineral royalty is a real right and the intent of the legislature was to impart to these rights the qualities of incorporeal immovables. However, perhaps in recognition of the difficulties inherent in such a classification, the Fourth Circuit specifically limited its decision to the context of the particular conflicts-of-law question involved in that litigation.
Although the hesitancy shown by the Simms court may indicate an awareness to the inaccuracies of equating real with immovable rights, the earlier jurisprudence evidenced no such reluctance. This is exemplified by the Supreme Court decision of Tyson v. Surf Oil Company, 195 La. 248,196 So. 336 (1940). In that case, the court had an occasion to interpret LSA-R.S. 9:1105 and held that the statute provided for the creation of "incorporeal immovables." Similarly, LeBlanc v. Palmisano, 43 So.2d 263 (La.App.Orl.1949), in discussing covenants, noted that any real rights created were by their very nature immovable.
One of the sources of this confusion stems from the Civil Code's definitions of real obligations.[8] The plaintiff in the present case contends that these Civil Code articles establishing real obligations create real rights, and thus incorporeal immovables. The danger is in confusing the traditional notion of obligations (a personal duty) with that of a real right (a proprietary interest in things). Real obligations refer to those obligations incurred as a result of the ownership or possession of a thing burdened by a real right. The obligation is clearly distinguishable from the right itself. The existence of a real obligation, despite the language of the Code,[9] does not demand the existence of an incorporeal immovable, for real obligations need not attach *732 to immovables only. Yiannopoulos cites pledge, chattel mortgage and usufruct of movables as examples of real rights which generate real obligations, although the object of the right asserted is a movable. Furthermore, he suggests that "real obligations" has lost its usefulness as a classification and should be abandoned, since real obligations will always be incidental and correlative to real rights. Yiannopoulos, Civil Law of Property, Chapter 6, Sec. 115, pp. 341-350. Such an interpretation appears correct in light of the underlying theory applied to rights and obligations. Plaintiff's contentions in this respect must be rejected.
Finally, the Civil Code and the Code of Civil Procedure's reference to the "Real Actions" provides the court with one more source of confusion in determining if a right is movable or immovable.[10] As already discussed, Civil Code Arts. 470 and 471 distinguish actions into movables or immovables according to the object of the rights asserted. Personal and real actions also appear in the Civil Code and are classified according to the nature of the rights asserted. Since the distinctions are based upon different criteria, real actions and immovable actions are not synonymous and movable or immovable actions may be either personal or real. Yiannopoulos, Civil Law of Property, Chapter 7, Sec. 135, p. 402. However, LSA-C.C.P. Art. 422 specifically defines a real action as "one brought to enforce rights in, to, or upon immovable property . . .," without reference to movables. This inconsistency is noted by the courts. In Moreland v. Rucker Pharmacal Company, Inc., 59 F.R.D. 537 (D.C.La. 1973), the Federal District Court observed that the Louisiana jurisprudence does not provide a real action for the determination of an interest in movables, although the Civil Code seems to provide for such an action.
As currently enacted, Code of Civil Procedure Art. 422 equates real actions with immovable real actions. However, as Yiannopoulos indicates, such an approach is contrary to the intention of the Civil Code and is probably due to the confusion existing between real rights and immovable rights prior to the enactment of the Code of Civil Procedure. The very fact that the Civil Code establishes a distinction between the "possessory action" and the "petitory action" without distinguishing between movables and immovables implies that these actions were intended to apply to all species of corporealsmovable or immovable. Currently, actions to enforce rights upon movables do not fall within the Code of Civil Procedure because they are not "personal" (since they involve ownership), nor "real" (they do not involve protection of immovable real rights). If, as suggested by Yiannopoulos, the term "Real Actions" was defined to include those brought for the enforcement of real movable rights, then the Code of Civil Procedure would conform to the terminology utilized within the Civil Code. Yiannopoulos, Civil Law of Property, Chapter 7, Sec. 135, pp. 404-405. Indeed, such is a desired construction if the distinction between real and immovable rights is to be finally clarified in the Louisiana jurisprudence, although this distinction by no means depends upon such an interpretation. Despite the inconsistencies of the Code of Civil Procedure, immovable rights remain a separate classification from those of real rights and the question in this case is not resolved by application of the Code of Civil Procedure's Article 422.
Clearly, then, despite the misinterpretations of the jurisprudence, real rights do not equal immovable rights, and merely because a real obligation or a real action is defined as connected to an immovable, no equalization of the two concepts has occurred.
LSA-R.S. 9:1105
In response to the Glassell decision, as discussed above, the Louisiana Legislature *733 enacted Act 205 of 1938 to attempt to classify mineral rights as incorporeal real immovables. The statute became LSA-R.S. 9:1105, and provided in part:
"Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property." (Emphasis supplied).
Hawthorne suggests this statute, especially when read together with LSA-C.C.P. 3664,[11] clearly indicates a legislative intent to classify a mineral right and all interests asserted therein as a real, immovable, and that therefore the gas-purchase contract should be so classified.
In one of the earliest cases interpreting Act 205 of 1938, the Second Circuit applied this act to a mineral lease and directly overruled the Glassell decision, thereby dismissing the defendant's exception to venue and declaring that the interests created in a mineral lease were "real." Payne v. Walmsley, 185 So. 88 (La.App. 2d Cir. 1938). However, the Supreme Court in Tyson v. Surf Oil Company, supra, while upholding the constitutionality of the act, stated that the purpose of the act was merely to give a procedural remedy. The court noted that a mineral lease remained a personal obligation, as determined in Glassell, however, under Act 205, the lease would be treated as if it had created real obligations in order to afford to the holder of the rights all of those remedies applicable to incorporeal immovable rights. Under the Supreme Court's interpretation, Act 205 was remedial and procedural in character.
In 1950, the legislature amended R.S. 9:1105 to include a provision that the act "shall be considered as substantive as well as procedural." LSA-R.S. 9:1105.[12] Despite this apparent attempt to reverse those court decisions interpreting R.S. 9:1105 as purely procedural and to classify mineral leases as real, immovable rights for all purposes, the jurisprudence has continued to label this statute as remedial in nature. Thus, in Tinsley v. Seismic Explorations, Inc., 239 La. 23, 117 So.2d 897 (1960), the Supreme Court ruled that R.S. 9:1105 did not change the substantive nature of the law, but merely gave to mineral leases the procedural remedies of real immovable right holders. The court specifically held that R.S. 9:1105 did not create real rights in a mineral lease, but only treated the existing personal rights as if they were real.
In 1974, with the adoption of the new Mineral Code, R.S. 9:1105 was repealed[13] and Art. 3664 of the Code of Civil Procedure was amended.[14] R.S. 9:1105 was replaced by LSA-R.S. 31:18, which now provides specifically that a mineral right is an incorporeal immovable and that the situs of a mineral right is the parish in which the land burdened with the right is located. LSA-R.S. 31:16 defines the term "mineral right" as including a mineral servitude, a mineral royalty, and a mineral lease. This same article allows for the creation of additional mineral rights by the landowner and provides that all such rights are real rights. No provision is made in either article, nor otherwise in the Mineral Code, for "[those] contracts applying to and affecting these leases" as appeared in R.S. 9:1105 and Art. 3664. The only mention of any sales or contracts affecting mineral rights appears in R.S. 31:18 and makes such acts subject to the laws of registry.
Continental contends that even if R.S. 9:1105 were held applicable to this case, the Second Circuit's opinion in Zadeck v. Arkansas Louisiana Gas Company, 338 So.2d *734 303 (La.App. 2d Cir. 1976), has distinguished the effect of this statute. Zadeck dealt with a gas-purchase contract for the sale of gas after it had been reduced to the seller's possession. The plaintiff was attempting to rescind the contract on the grounds of lesion beyond moiety claiming that R.S. 9:1105 classified the contract as an immovable. The court stated:
"[T]he contract [at issue] does affect [defendant's] right to take possession of gas from one already in possession, [but] we hold that it does not affect the right to reduce gas to possession within the meaning of R.S. 9:1105. That statute applies to capturing minerals which are in natural reservoirs and not to transfer of possession of minerals already `reduced to possession'." Zadeck, supra, at 305.
The court reasoned that gas reduced to possession is a movable under LSA-C.C. 473[15] and therefore, denied plaintiff's claim of lesion.
Although from the Second Circuit, this case is clear authority for the proposition that R.S. 9:1105 does not apply to the transfer of possession of minerals once reduced to possession, exactly the type of situation created by the contract currently before the court. That statute clearly relates to the capturing of minerals contained in their natural reservoirs, and no distinction of Zadeck based upon the misapplication by the court of the principles of lesion or the contents of the contract therein disputed, as suggested by Hawthorne, can limit the effect of the court's ruling: R.S. 9:1105 does not apply to contracts of the type here at issue.
But, even if Zadeck had not been decided, R.S. 9:1105 does not create an immovable right in this case. This statute has been repeatedly classified as procedural by the courts of this state. It does not change the test for determining whether a right is movable or immovable. That test is still governed by Civil Code Art. 470 and is independent of the question of whether real rights are affected. While enacted, R.S. 9:1105 was itself a source of the confusion in the jurisprudence between real and immovable rights. Now that the statute has been repealed, it should not continue to so adversely influence the courts.
CREATION OF INCORPOREAL IMMOVABLE RIGHTS BY CONTRACT
In the gas-purchase contract entered into between Hawthorne and Continental, Article XIII, entitled "Assignability" provides that:
"1. The contract shall be binding upon and issue to the benefit of the heirs, legal representatives, successors and assigns of the respective parties hereto and shall constitute a real covenant running with the leasehold and/or lands covered hereby provided that no sale or transfer of seller's leaseholds and/or lands covered hereby shall be made unless the conveyance provides that such sale or transfer is made subject to this contract and that the transferee agrees to be bound hereunder." (Emphasis supplied)
Hawthorne contends that by insertion of this provision, the parties have created incorporeal real, immovable rights. Continental argues that it is immaterial whether the contract is designated as "running with the leasehold and/or land[s]" for the correct test is found in Civil Code Art. 470 to determine if incorporeal immovable rights are created.
We conclude that Article XIII of the gas-purchase contract does not create incorporeal immovable rights. The article speaks of the creation of "real covenants running with the [land]." It does not specifically attempt to create incorporeal immovables. As we have already seen, a real right or covenant is not the same concept as an incorporeal immovable. Each classification is determined by a different test, one by the object of the right and the other by the nature of the right. It is true that a real covenant may relate to and benefit *735 land, LeBlanc v. Palmisano, supra, but merely because the parties have determined that this contract is to "run with the land" does not create immovable rights. The test for that classification is still to examine the object of the right asserted.
Furthermore, Hawthorne places great reliance in its argument that R.S. 9:1105's interpretation of real rights, when applied to Article XIII, justifies the classification of this contract as an immovable. However, as discussed above, R.S. 9:1105 does not create incorporeal immovable rights. Thus, Hawthorne cannot rely upon this statute to supply the interpretation it seeks for Article XIII.
A problem somewhat similar to the case at bar was raised in St. Charles Land Trust, Achille Guibet v. St. Amant, supra. In that case, the question revolved around the classification of a decedent's beneficial trust interest as movable or immovable for purposes of determining whether the heirs would be required to pay inheritance tax. The interest concerned a mineral lease and mineral servitudes held in trust and the trust instrument specifically provided that "the interests are classified as movable property." The court noted that a beneficial interest in a trust is an incorporeal right, and, therefore, applied Civil Code Art. 470 to hold that, under the Code, incorporeal immovable rights were created since the object of the interest asserted was the mineral leases and servitudes. The Supreme Court stated that the trust instrument's classification of these rights as "movable" was without effect because such a provision clearly violated the intention of the legislature.
Similarly, the classification of the rights of Hawthorne and Continental in their contract as "real" should not be construed as creating immovable rights, because the effect of such a classification is to designate those rights created in contravention to their classification if the clear test of Civil Code Art. 470 were properly applied.
Clearly, when examining the Civil Code, the jurisprudence, the statutory constructions and the contract itself, the test for determining whether an incorporeal right is a movable or an immovable is to examine the object of the right asserted. With this question firmly decided, it next becomes necessary to examine the contract itself and determine the exact nature of the object of the right asserted and to examine those cases interpreting the classification of objects under LSA-C.C.P. Art. 80.
DETERMINATION OF THE OBJECT OF THE RIGHT ASSERTED UNDER THE CONTRACT AT ISSUE
As Professor Yiannopoulos notes, the object of a contract and the object of a right asserted in that contract may be two separate things. The example he gives is that in a contract for the sale of an immovable, the purchaser's right to claim delivery of the immovable is an incorporeal immovable, while the vendor's right to claim payment of the purchase price is an incorporeal movable. The object of the contract itself is immovable, since the contract contemplates the sale of an immovable. Yiannopoulos, Civil Law of Property, Chapter 4, Sec. 60, p. 179.
Litigation concerning gas-purchase contracts and the classification of rights created by those agreements as movables or immovables is limited. Zadeck v. Arkansas Gas Company, supra, appears to be the only case to squarely address this question. In that action, the court classified a gas-purchase contract for the sale of gas reduced to possession as a movable right. The court applied LSA-C.C. 473 to hold that gas reduced to possession and extracted from the land was a movable. Therefore, according to the reasoning of the Zadeck court, any rights asserted in the contract had as their object a movable, thus these rights were classified as incorporeal movables. Hawthorne attempts to distinguish this case by noting that in Zadeck the contract did not contain a provision whereby the parties had labeled the agreement as a "real covenant." However, as previously discussed, such a provision does not affect the classification of rights into movables or immovables, and in any event, it may be invalid as creating *736 rights in contravention of the law. Zadeck therefore remains valid authority for the proposition that rights arising from a contract for the purchase of gas reduced to possession will be classified as incorporeal movables.[16]
Other cases by implication support the Zadeck decision. Vander Sluys v. Finfrock, supra, held a contract selling gas beneath the surface to be an incorporeal immovable. The court seemed to be indicating that had the contract been for gas reduced to possession, the rights thus created would have been classified as incorporeal movables.[17] Similarly, in Pique v. Ingolia, 162 So.2d 146 (La.App. 4th Cir. 1964), the plaintiff sought an accounting in a partnership dealing with the transfer of mineral leases. The court held, however, that the actual title of the leases was not involved so the mandatory venue provisions of C.C.P. Art. 80 did not apply, apparently ruling that the object of the right asserted was movable. Other cases have reached the same outcome but have directed their examination on a different level in holding that actions to recover money from a mineral right created an incorporeal movable right, because the object of the right asserted (i. e., the money) was movable. McFeeley v. Hargrove, 166 So.2d 333 (La.App. 1st Cir. 1964); Steinau v. Pyburn, 229 So.2d 153 (La.App. 2d Cir. 1969). These cases examined the individual object of the right of each party in the contract, rather than the object of the contract itself, but note that in both instances, there was clearly no interest in the mineral right itself in question in the suit.
Under the tests discussed above, the objects of the rights asserted by Hawthorne appear to be incorporeal movables, i. e., the money due under the contract and the cancellation of an agreement to sell gas reduced to possession, clearly a movable under LSA-C.C. Art. 473. However, the terms of the contract extend beyond the mere sale of gas reduced to plaintiff's possession.
We have already seen how the parties created a real covenant "running with the land." The significance of this provision in Article XIII is that it binds any subsequent assignees or transferees of plaintiff's mineral lease to the gas-purchase contract.
Article IV, Sec. 3 of the agreement, entitled "Pipeline and Gathering Facilities" provides:
"Seller hereby grants to Buyer, insofar as Seller has the right to do so, easements and rights-of-way over, across, and under Seller's leaseholders and/or lands . . . with full right of ingress and egress for the purpose of constructing, maintaining, and operating pipelines, meter stations and other equipment necessary for carrying out the terms of this contract."
The effect of this provision is that the plaintiff has conveyed a servitude to defendant over the property governed by plaintiff's mineral lease for the purpose of allowing defendant to construct pipelines and metering stations to remove the gas from the property. Hawthorne contends this provision creates an incorporeal immovable right, which is one of the objects of the contract. Continental argues that this is not a servitude, and in any event, the object of the contract remains the purchase of gas, not the placement of pipelines.
A servitude creates incorporeal immovable rights. Dunckelman v. Central Louisiana Electric Company, Inc., 291 So.2d 914 (La.App. 3rd Cir. 1974). However, Continental contends that no servitude has been created in this instance because servitudes can only be established by the landowner and the right at issue was created by the lessee. This rule has been stated in the past, particularly in discussing the creation *737 of mineral servitudes. Long-Bell Petroleum Company v. Tritico, 216 La. 426, 43 So.2d 782 (1949); Leiter Minerals, Inc. v. California Company, 241 La. 915, 132 So.2d 845 (1961). However, mineral servitudes are not at issue in this case, merely the question of defendant's right to lay pipeline upon the property of the mineral lessor.
LSA-C.C. Art. 729 provides: "The right of imposing a servitude permanently on an estate belongs to the owner alone." However, the Code authorizes servitudes to be established by other parties as well, including a purchaser with a right of redemption, Art. 735, and a partial or conditional owner, Art. 736, but such servitudes cease with the right of the grantor. Thus, the Civil Code appears to allow any party who enjoys some right of ownership in the property to create a servitude which ceases with his right. A lessee, however, does not enjoy this special relationship with the property and therefore is unable to create servitudes over the lessor's property. Thus, plaintiff's statement that Article 736 of the Civil Code is "made for this case" is inaccurate, since that article speaks only of ownership, not lease.[18]
However, the jurisprudence has recognized that the very existence of a mineral lease contemplates that the lessee has a right to lay pipelines and to make other works and constructions on the property which are reasonably necessary for the full exploration of the property and enjoyment of the leasehold interest. Rohner v. Austral Oil Exploration Company, Inc., 104 So.2d 253 (La.App. 1st Cir. 1958). Unless there is some specific provision to the contrary, Hawthorne, as the mineral lessee, is entitled to make and operate the constructions as contemplated within this agreement. As the lease itself was not introduced in evidence that Hawthorne's rights in this respect have been in anyway limited by that document, it must be presumed that there was no restriction upon its right to exercise these servitudes over the lessor's property.
Under the Mineral Code, the lessee's interest in a mineral lease may be assigned in whole or in part. LSA-R.S. 31:127. Clearly then, Hawthorne may assign those rights it acquired by virtue of the lease to a third party. This is exactly what Article IV, Sec. 3 purports to accomplish. It assigns plaintiff's rights to "easements and rights-of-way" over the property, to the extent the lease permits. The plaintiff has not created a servitude on the lessor's property, but merely assigned the right to exercise this servitude to Continental. The servitudes themselves were created by the landowner. Article IV, Sec. 3 is therefore a valid provision.
THE EXISTENCE OF MULTIPLE OBJECTS
Hawthorne contends that the object of this contract is immovable. Plaintiff would classify "object" as referring not merely to the sale of the gas, but to all other rights and interests created under the contract. Thus, the assignment of the servitude and the restrictions on the transferability of the mineral lease would, in this approach, be considered as much an "object" of the contract as the purchase of the gas.
The test of Civil Code Article 470 is clear: Look to the object of the right asserted. Hawthorne herein seeks to recover the full purchase price as agreed upon between the parties. The object of this right is the actual money in dispute, a movable. However, plaintiff also asserts the right to cancel the contract. The object of the contract is not just the purchase and sale of gas reduced to possession, but also the assignment of a servitude to the defendant and the limitation on future transfer of plaintiff's mineral lease. Although the purchase *738 of the gas is the central object upon which the contract rests, the terms of the agreement create several auxiliary objects equally as important in the contract's implementation. Without a servitude to remove the gas, it would have been pointless to purchase the gas. Consequently, the right herein asserted by plaintiff appears to have several objects: The purchase price of the gas, an incorporeal movable, the recovery of a servitude, an incorporeal immovable, and the removal of restrictions imposed upon the transfer of the mineral lease, an incorporeal immovable. Defendant's simple contention that the object of this contract is a "movable" fails to appreciate the scope of the agreement.
In the past, actions which have asserted rights whose objects have been both movable and immovable have been classified as mixed actions under LSA-C.C.P. Art. 422[19] and venue has been held to be in the parish where the immovable property was located. Polmer v. Spencer, 256 So.2d 766 (La.App. 1st Cir. 1971). The court in Polmer noted that since the action involved an immovable, LSA-C.C.P. Art. 80 would apply, despite the fact that a movable right was also asserted. Thus, the rule appears to be that if there are multiple rights asserted, or if multiple objects are involved, the classification of any object as an "immovable" will operate to treat the entire action as if it were immovable and venue will be controlled by LSA-C.C.P. Art. 80.
Such an interpretation is clearly warranted by the Code of Civil Procedure, LSA-C. C.P. Art. 5051 decrees that articles are to be construed liberally,[20] and the very wording of Art. 80 would seem to require such an expansive reading. Venue is to be brought in the parish where the property is situated if "an interest in immovable property, or a right in, to, or against immovable property" is asserted. Clearly, this provision seeks to include any immovable interest asserted within the scope of the article.
This result would also recognize the clear intention of the parties, which should generally be ascertained and followed in interpreting mineral contracts. United Lands Company v. Pan-American Production Company, 13 So.2d 519 (La.App.Orl.1943). By contracting to make this agreement a "real covenant running with the land," Hawthorne and Continental obviously intended to burden plaintiff's mineral leasehold interest. In requiring that subsequent transferees and assignees of the lease could only take subject to the provisions of the gas-purchase contract, the parties attempted to make the object of the contract immovable.
CONCLUSION
The gas-purchase contract between Hawthorne and Continental has multiple objects of the rights protected by that agreement. The purchase of the gas is the primary object of the contract and it creates incorporeal movable rights in the parties. If Hawthorne's claim herein was merely for the recovery of the negotiated purchase price, then defendant's exception to the venue would stand, for the object would be solely movable. However, the plaintiff also seeks the termination of the agreement itself and this involves cancellation and assertion of all rights in the contract, including certain auxiliary objects which create incorporeal immovable rights. Since immovable rights are affected, the suit must be brought in Vermilion Parish and the action of the trial court should be reversed.
DECREE
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered overruling defendant's exception to the venue. This case is remanded to the district court for further *739 proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against the defendant. Assessment of costs of the trial court must await a final judgment there.
REVERSED AND REMANDED.
NOTES
[1] LSA-C.C.P. Art. 42(4) provides:

"[An action against] a foreign corporation licensed to do business in this state shall be brought in the parish where its principal business establishment in the state is located, as designated in its application to do business in the state."
[2] LSA-C.C. Art. 460[3] provides:

"Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding, such as the rights of inheritance, servitude and obligations."
[3] LSA-C.C. Art. 463 provides:

"There are things immovable by their nature, others by their destination, and others by the object to which they are applied."
[4] Gas reduced to possession is classified as a movable under LSA-C.C. Art. 473.
[5] Specifically, LSA-C.C. Art. 471 states:

"The following are considered as immovable from the object to which they apply:
"The usufruct and use of immovable things. A servitude established on an immovable estate. An action for the recovery of an immovable estate or an entire succession."
[6] See LSA-C.C. Arts. 490, 492, 1904, 3282, 3454, 3529.
[7] Act. 205 of 1938 was embodied in LSA-R.S. 9:1105 until repealed in 1974. This act is discussed fully in Section I(c) below.
[8] LSA-C.C. Art. 1997[3] provides:

"[An obligation] is real when it is attached to immovable property, and passes with it into whatever hands it may come, without making the third possessor personally responsible."
LSA-C.C. Art. 2010 states:
"When obligations are attached to immovable property, they . . . are called real obligations."
[9] See LSA-C.C. Arts. 2011, 2015 and 2019 for Civil Code Articles which equate real obligations with immovable property. Art. 2011 denotes that all real obligations and rights therefrom pass with the property affected. Art. 2015 notes that servitudes, leases and other rights imposed on the land by the owner form real obligations. Art. 2019 discusses the relationship between real and personal obligations.
[10] See LSA-C.C. Arts. 3455 and 3459 which imply the existence of a real action over immovable property.
[11] LSA-C.C.P. Art. 3664, prior to amendment in 1974, provided, in part:

"A mineral lessee or sublessee, owner of a mineral interest in immovable property, owner of a mineral royalty, or of any right under or obligation resulting from a contract to reduce oil, gas and other minerals to possession, is the owner of a real right. . . ."
[12] As amended Acts 1950, 2d Ex.Sess., No. 6, Section 1.
[13] By Act 1974, No. 50, Section 3.
[14] By Acts 1974, No. 547, Section 1.
[15] This article classifies movables by their nature as things which may be carried or moved from one place to another.
[16] Provided, of course, that the object of the contract remains the gas reduced to possession. If there is more than one object contemplated by the agreement, then this may change the classification depending upon whether any multiple objects are immovables. See discussion below.
[17] The Texas courts have apparently utilized similar reasoning in their interpretation of gas contracts and the burden thus created on the land. See: American Refining Company v. Tidal Western Oil Corporation, 264 S.W. 335 (Tex.Civ.App. 1924).
[18] LSA-C.C. Art. 736 provides in part:

"Those who have not the full ownership, whose ownership in the estate ceases on a certain condition, or at a particular time, may establish servitudes thereon, but they cease with their rights . . . ."
This article was repealed in 1977 and now appears without substantive change as LSA-C.C. Art. 712.
[19] LSA-C.C.P. Art. 422[3] provides:

"A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof."
[20] LSA-C.C.P. Art. 5051 provides:

"The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves."