499 So.2d 953 (1986)
Zema Marie LEGER, et al., Plaintiffs-Appellants,
v.
PETROLEUM ENGINEERS, INC., Defendant-Appellee.
No. 85-526.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
*954 Reule Bourque, Kaplan, for plaintiffs-appellants.
Robert Cabes and Mark B. Olivier, Lafayette, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
GUIDRY, Judge.
This is a suit for damages allegedly resulting to plaintiffs' property from their mineral lessee's disposal of waste salt water in a dry hole drilled thereon. From an adverse judgment, plaintiffs have appealed urging that the trial court erred in its conclusion that the "granting clause" of the oil, gas and mineral lease, executed by the parties or their ancestors in title, authorized lessee's use of a previously drilled dry hole as an injection well for the disposal of waste salt water obtained during production of oil from other wells located on plaintiffs' property.
In reaching his decision, the learned trial judge rendered written reasons which, in pertinent part to the issue raised on appeal, read as follows:
"Plaintiffs filed this suit under an oil, gas and mineral lease, seeking damages they allegedly sustained as a result of the unauthorized disposal of salt water into a salt water disposal well located on their property in Vermilion Parish. Lessors, I.P. Saal, Zema Marie Leger, and her husband, Gradie Lee Humble, now deceased, granted the lease to A.M. Barbe, lessee, on January 8, 1941.
The lease provides in pertinent part:
`Lessor ... hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipelines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport and own said products and housing its employees, the following described land in Vermilion Parish, Louisiana...'
Sometime after January 8, 1941, two wells were drilled on the property which produced oil, as well as waste salt water. On March 5, 1978, a well was drilled on the property, identified as the Humble No. 1 Well, which resulted in a dry hole and was converted to a salt water disposal well with the approval of the Office of Conservation on March 14, 1978.
Thereafter, beginning in November, 1978, defendant, PEI, acquired a working interest in the leased property and continued to use the well for disposal of the salt water produced by the other two wells on the property.
From January, 1979 to March, 1982 defendant disposed of over 600,000 barrels of salt water through the salt water injection well.... Thereafter, this suit was filed on May 18, 1983. Plaintiffs *955 seek damages for unauthorized disposal of salt water on the property.
The issues in this case are:
1) Does the mineral lease between the parties allow the defendant to dispose of salt water obtained from production into a salt water injection well on plaintiffs' property?
....
Mr. Donald E. Claxton, president of Petroleum Engineers, Inc., was accepted by the Court as an expert in the field of petroleum engineering. He testified that salt water production is a necessary part of the production of oil from plaintiffs' property, and that there is no way to produce oil from plaintiffs' property without some means of disposing of the salt water. The waste salt water is injected into an area that is geologically separate from the oil producing reservoir. It does not damage the sub-surface reservoir, or the surface of plaintiffs' property, which is used as pasture land.
The parties to a lease may contract and agree to any terms and conditions which are not against the public policy, or laws of this State. The granting clause of the lease, in this case, does not specifically address the question of salt water injection or disposal, but is a broad, general grant of rights and authority to the lessee. The Court finds that the production of salt water from the wells is a necessary and unavoidable result of the production of oil from the property and defendant must dispose of the waste salt water as a necessary and essential incident of the production of oil. Therefore, the Court holds that the granting clause of the lease does encompass and include the right of lessee to dispose of the waste salt water through an on-site injection well, where the method does not damage the surface or sub-surface of plaintiffs' property. Had plaintiffs not desired to grant the right of salt water disposal to defendant, it could have restricted that right in the lease, as many lessors have done.
..."
Although our research discloses that the precise issue presented for review is res nova, we ultimately conclude that the trial court's decision, under the particular circumstances of this case, is correct.
The granting clause of an oil and gas lease sets forth the purpose for which the lease is made and generally specifies, in some detail, the uses of the land granted to the lessee for accomplishment of the overall purpose. The specification of land usage granted to a lessee is usually governed in great measure by the state of technology prevalent in the industry at the time the lease is confected. Thus, in early oil and gas leases, the granting clause was usually brief and somewhat general. However, with the advent of new and improved methods of exploration, production and marketing, land usage statements contained in granting clauses have become much more detailed. In any event, our jurisprudence recognizes that the lessee, under an oil and gas lease, may make such use of the surface of the leased property and construct such works thereon as are reasonably necessary for the full exploration of the property and enjoyment of the leasehold interest. Rohner v. Austral Oil Exploration Company, Inc., 104 So.2d 253 (La.App. 1st Cir.1958); Hawthorne Oil and Gas Corporation et al v. Continental Oil Company, 368 So.2d 726 (La.App. 3rd Cir.1979), reversed on other grounds, 377 So.2d 285 (La.1979).
The oil and gas lease at issue in this case was executed in January of 1941. The granting clause contained in this vintage lease is brief and somewhat general. The purpose of the lease is clearly stated, however, the lessee's privilege of user of the land makes reference only to uses of the surface, i.e., laying pipelines, building tanks, power stations, telephone lines and other structures thereon etc. Clearly, the lease does not specifically grant lessee the right to dispose of waste salt water obtained from production of oil from other wells located on plaintiffs' property into the sub-surface by means of an on site injection well. Nor can it be said that, at *956 the time the lease was confected, the parties contemplated such use.[1] In spite of the above, we conclude that, under the facts present, the specific use by defendant of the premises, of which plaintiffs complain, is impliedly granted because such use causes no damage to the surface or sub-surface and is reasonably, if not absolutely, necessary for accomplishment of the overall purpose for which the lease was granted, i.e., production of oil from the leased property. The reasonable necessity for the method of salt water disposal employed by defendant is made clear in the record. The other wells located on plaintiffs' property are marginal, producing from eight to ten barrels of oil daily and 180 to 200 barrels of salt water. Were it not for the injection well, the cost of holding tanks, trucking and commercial disposal would, from an economic standpoint, make continued operation of the lease doubtful. For these reasons, we conclude that the trial court's conclusion is correct.
Appellants next urge that the following clause of the lease specifically prohibits use by the defendant of the Humble dry hole as an injection well:
"Lessee agrees to pay for all damages to timber and growing crops resulting from his operations on land leased (if any well is drilled on cultivatable land resulting in a dry hole, then within sixty (60) days after abandonment, Lessee agrees to restore the surface of said land so as to render it suitable for cultivation)."
We find no merit in this contention. The quoted provision deals with surface damages and imposes upon the lessee the obligation to restore the surface of the land. There is no evidence in the record suggesting that lessee has not restored the surface of the land surrounding the Humble well. Further, this provision does not restrict or limit lessee's use of the sub-surface nor does it prohibit the disposal by lessee of waste salt water in a manner which causes no damage to the surface or sub-surface. Finally, the clause is not, as appellants contend, in conflict with the granting clause.
For these reasons, the judgment appealed from is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] There is no evidence in the record indicating when the practice of salt water disposal into the sub-surface by means of an injection well became common practice in the industry.